**UNITED STATES of America, Appellee,**

v.

**Ramon FALU, Defendant-Appellant.**

**No. 54, Docket 85–1138.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 26, 1985.

Decided Oct. 30, 1985.

---

Douglas F. Eaton, New York City, for defendant-appellant.

Herve Gouraige, Asst. U.S. Atty. for the S.D. of N.Y., New York City (Rudolph W. Giuliani, U.S. Atty. for the S.D. of N.Y., John F. Savarese, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before FEINBERG, Chief Judge, KEARSE and CARDAMONE, Circuit Judges.

FEINBERG, Chief Judge:

Ramon Falu appeals from a judgment of conviction following a jury trial before Robert L. Carter, J., in the United States District Court for the Southern District of New York. Appellant Falu was convicted on one count of distributing heroin within 1,000 feet of a school, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 845a(a) and 18 U.S.C. § 2. Falu raises several claims on appeal. Most significantly, he objects to the district court's construction of 21 U.S.C. § 845a(a), which enhances penalties for those convicted of distributing drugs near a school. We find that the district court correctly interpreted the statute and that none of Falu's other arguments have merit. We affirm his conviction.

I.

Appellant was arrested as part of an undercover operation. From the evidence before it, the jury could have found that Officer Jose Santiago, posing as a drug user, approached Falu and asked him in Spanish for heroin. Falu responded, "Come on, I take you to some one who got some good stuff," and then accompanied Santiago one block north to the street corner where co-defendant Manuel Perez was selling heroin. Falu called Perez over, addressing him by the nickname "Carmello," and indicated that Santiago wanted heroin. Perez and Santiago negotiated the sale, and the officer then departed. Falu and Perez remained together on the street corner. They were arrested a few minutes later by Santiago's back-up team. Perez had the $20 of prerecorded "buy-money" on him; Falu had no funds.

Falu and Perez were both charged with one count of conspiracy to distribute heroin and one count of distribution. After presentment, Perez became a fugitive and, consequently, Falu was tried alone. The government's only witnesses at trial were

two police officers, one of whom was Santiago. On a defense motion, with the consent of the government, the conspiracy count was dropped. The nature of the substance sold to Santiago, the proximity of Public School 7 and the fact that the school was not in view from the location where the sale was made were stipulated at trial. The government introduced no evidence to show that Falu knew he was within 1,000 feet of a school. Appellant did not testify on his own behalf; he called no witnesses and presented no evidence.

The jury convicted Falu of aiding and abetting Perez's distribution of heroin within 1,000 feet of a school. After denying Falu's motions for acquittal and a new trial, Judge Carter sentenced him to eight months imprisonment, followed by ten years special parole, and assessed him $50 as provided by 18 U.S.C. § 3013. This appeal followed.

## II.

The statute principally involved in this case, hereinafter referred to as the "schoolyard statute," 21 U.S.C. § 845a, was enacted in October 1984. Designed to "send a signal to drug dealers that we will not tolerate their presence near our schools," 130 Cong.Rec. S559 (daily ed. January 31, 1984) (statement of Sen. Paula Hawkins), the statute provides stiff penalties for anyone convicted of selling drugs within 1,000 feet of a public or private elementary or

secondary school. A first conviction carries a term of imprisonment of up to twice that authorized for a violation of 21 U.S.C. § 841(a)(1) and a term of special parole of at least twice that authorized by section 841(b).[1] A second offense carries a minimum sentence of three years and a maximum of life, followed by at least three times the special parole authorized by section 841(b). Section 845a(c) restricts parole eligibility.[2]

Appellant objects to application of the schoolyard statute to him on two grounds. First, he claims that the schoolyard statute does not apply to aiders and abettors. He stresses that it singles out for enhanced penalties only distribution of a controlled substance from among all section 841(a)(1) offenses. From this, he argues that the schoolyard statute does not apply to an aider and abettor who does not actually distribute or control the distribution of narcotics. Appellant contends that the legislative history supports this construction, since Congress expressed its objection to "pushers" and "dealers" operating in areas around schools, but made no mention of "steerers" or other supporting actors in the distribution process. See 130 Cong.Rec. S559, supra. Appellant notes that application to aiders and abettors could result in conviction under the schoolyard statute of someone who was never within 1,000 feet of a school. Citing the "rule of lenity" used to construe criminal statutes, includ-

---

1. Section 845a(a) provides:
    Any person who violates section 841(a)(1) of this title by distributing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary or secondary school is (except as provided in subsection (b) of this section) punishable (1) by a term of imprisonment, or fine, or both up to twice that authorized by section 841(b) of this title; and (2) at least twice any special parole term authorized by section 841(b) of this title for a first offense involving the same controlled substance and schedule.

2. Sections 845a(b) and (c) provide:
    (b) Any person who violates section 841(a)(1) of this title by distributing a controlled substance in or on, or within one thousand feet of, the real property comprising a

public or private elementary or secondary school after a prior conviction or convictions under subsection (a) of this section have become final is punishable (1) by a term of imprisonment of not less than three years and not more than life imprisonment and (2) at least three times any special term authorized by section 841(b) of this title for a second or subsequent offense involving the same controlled substance and schedule.

(c) In the case of any sentence imposed under subsection (b) of this section, imposition or execution of such sentence shall not be suspended and probation shall not be granted. An individual convicted under subsection (b) of this section shall not be eligible for parole under section 4202 of Title 18 until the individual has served the minimum sentence required by such subsection.

ing sentence-enhancing provisions, see *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980), he also urges that the statute not be applied to aiders and abettors absent a clear indication that Congress intended to do so.

Second, Falu argues that section 845a(a) does not apply unless a defendant had specific knowledge of the proximity of a school, which was not established at Falu's trial. He relies on *Liparota v. United States*, — U.S. —, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), which held that to convict under 7 U.S.C. § 2024(b) the government had to prove that the defendant knew "his acquisition or possession of food stamps was in a manner unauthorized by statute or regulations." *Id.* at 2092 (footnote omitted). Appellant argues that without a requirement that a defendant be aware of the key element under the schoolyard statute, namely, proximity to a school, the statute fails to provide fair notice that the prohibited conduct is subject to enhanced penalties. Appellant describes urban areas where schools are not clearly visible from points within the 1,000-foot zone or are not readily identifiable.

Falu attempts to distinguish the schoolyard statute from a statute like 18 U.S.C. § 111, which makes assaulting a federal officer a federal offense regardless of the defendant's knowledge of the victim's identity. See *United States v. Feola*, 420 U.S. 671, 684, 95 S.Ct. 1255, 1263, 43 L.Ed.2d 541 (1975). Section 111, Falu argues, seeks to effectuate the legislative aim—protection of federal officers—directly, while the schoolyard statute operates only indirectly to benefit school children. Appellant maintains that requiring the government to establish knowledge is fully compatible with a legislative scheme affording indirect protection, and in his brief he gives examples of how knowledge could be established.

■ We have no precedent directly on point dealing with the interpretation of section 845a(a). Therefore, we rely primarily on the language of the statute and its legislative history, and the effect of the general aiding and abetting statute. We do not find support in these sources for appellant's claim that the schoolyard statute cannot apply to aiders and abettors. Section 2(a) of Title 18 of the United States Code states that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." This section has been broadly' interpreted to mean that "all participants in conduct violating a federal criminal statute are 'principals.'" *Standefer v. United States*, 447 U.S. 10, 20, 100 S.Ct. 1999, 2006, 64 L.Ed.2d 689 (1980). By its terms, the schoolyard statute admits no exception to the general rule that aiders and abettors are punishable as principals. While appellant contends that the legislative history provides the necessary indication, we do not agree. The sparse legislative history simply provides no expression either way. In the face of this silence, we must presume that Congress intended aiders and abettors to be punished as principals.

Because 18 U.S.C. § 2 requires that legislative silence be interpreted to encompass aiders and abettors, the "rule of lenity" cited by appellant is not applicable and reliance on *Bifulco* is misplaced. We realize that, under this interpretation, an aider and abettor located outside the 1,000-foot zone would be subject to the enhanced penalties of the schoolyard statute. While we do not have to address this problem here, since Falu does not contest the fact that he was within 1,000 feet of a public school, we believe that the statute could apply to such cases, so long as distribution itself occurred within 1,000 feet of the school.

■ We find appellant's second objection to the application of the schoolyard statute equally unpersuasive. It is true that "criminal offenses requiring no *mens rea* have a 'generally disfavored status,'" *Liparota*, supra, 105 S.Ct. at 2088 (citation omitted), but Congress can dispense with this requirement. *Id.* at 2087.[3] The lan-

---

**3.** Congress must act within constitutional limits, of course. See *Liparota*, supra, 105 S.Ct. at 2087

guage of section 845a(a) contains no express *mens rea* requirement for the distance element of the offense. While " 'far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement,' " *id.* at 2088 (citation omitted), we find that Congress has provided us with more.

The purpose of the statute is clear from a reading of the legislative history. Congress sought to create a drug-free zone around schools; whether it chose to do so directly or indirectly is not particularly relevant. According to its sponsor, the provision was designed to "deter drug distribution in and around schools," including transactions which "take place in remote outdoor areas, at local hangouts, or at nearby homes or apartments," thereby helping to "eliminate outside negative influences" around schools. See 130 Cong. Rec. S559, supra. Judge Weinfeld has described the statute in the following terms: "It is difficult to imagine a more rational way of keeping drug traffickers out of areas where children are more likely to come into contact with them than to subject them to a risk of stiffer penalties for doing business near school property." *United States v. Nieves,* 608 F.Supp. 1147, 1149–50 (S.D.N.Y.1985). We find that a requirement that the dealer know that a sale is geographically within the prohibited area would undercut this unambiguous legislative design. See *United States v. Cunningham,* 615 F.Supp. 519 (S.D.N.Y.1985) (no proof of knowledge or intent for the element of distance required; *Liparota* distinguished).

This construction of section 845a(a) does not criminalize otherwise innocent activity, since the statute incorporates section 841(a)(1), which already contains a *mens rea* requirement—one must *"knowingly* or *intentionally* ... distribute ... a controlled substance." (emphasis supplied). This distinguishes the schoolyard statute

from the one involved in *Liparota,* where failure to impose a *mens rea* requirement would "criminalize a broad range of apparently innocent conduct." 105 S.Ct. at 2088. Anyone who violates section 845a(a) knows that distribution of narcotics is illegal, although the violator may not know that the distribution occurred within 1,000 feet of a school. In this respect, the schoolyard statute resembles other federal criminal laws, which provide enhanced penalties or allow conviction for obviously antisocial conduct upon proof of a fact of which the defendant need not be aware. See, e.g., *United States v. Feola,* supra; *United States v. Roglieri,* 700 F.2d 883, 885 (2d Cir.1983) (knowledge that stolen item came from the mail is not required under 18 U.S.C. § 1708); *United States v. Baker,* 693 F.2d 183, 185–86 (D.C.Cir.1982) (18 U.S.C. § 641 does not require proof of knowledge that stolen property belonged to the government); *United States v. Hamilton,* 456 F.2d 171, 173 (3d Cir.), cert. denied, 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972) (18 U.S.C. § 2423 doubles the penalty for interstate transportation for the purpose of prostitution if a minor is involved, regardless of knowledge of age); *United States v. Mingoia,* 424 F.2d 710, 713 (2d Cir.1970) (knowledge that stolen goods were transported in interstate commerce is not required by 18 U.S.C. § 2314). Although we are aware that some schools are not clearly recognizable as such from all points within the 1,000-foot radius, Congress evidently intended that dealers and their aiders and abettors bear the burden of ascertaining where schools are located and removing their operations from those areas or else face enhanced penalties.

### III.

■ Appellant raises three other claims, which merit only brief discussion. First, he challenges the sufficiency of the evidence of intent to aid and abet, claiming that it did not establish that he had an

---

n. 6. We do not understand appellant to argue that the statute would be unconstitutional with

out a knowledge requirement.

interest in Perez's operation. After reviewing the evidence adduced at trial, we find that appellant has failed to sustain the heavy burden borne by a defendant challenging the sufficiency of the evidence on appeal. See *United States v. Tyler*, 758 F.2d 66, 68 (2d Cir.1985) (affirming aiding and abetting conviction). The evidence showed that Falu offered to take Santiago to someone who would sell him heroin, demonstrated his knowledge of Perez and his operation, introduced the buyer and seller and remained with Perez during and after the transaction. Although the evidence of aiding and abetting was somewhat weaker than in *Tyler*, the jury could reasonably infer that Falu associated himself with the venture, participated in it as in something he wished to bring about and sought by his action to make it succeed. See *id.* at 70.

Falu also objects to statements made by the attorney for the government in summation and rebuttal, focusing particularly on the remark "We know full well what he [Falu] was doing...." Appellant argues that such statements implied that the government had additional information of a criminal relationship between Falu and Perez, and that such an implication was found prejudicial in *United States v. Burse*, 531 F.2d 1151, 1154–55 (2d Cir.1976). However, the remarks in *Burse* were only a minor portion of a pattern of prosecutorial misconduct, not present here. Moreover, we do not agree with appellant's characterization of the statements in this case. Considering the remarks in context, they represent no more than an assertion that all who had listened to the evidence, including the jury, could and should infer that Falu assisted Perez's operation. Cf. *United States v. Williams*, 583 F.2d 1194, 1201 (2d Cir.1978), cert. denied, 439 U.S. 1117, 99 S.Ct. 1025, 59 L.Ed.2d 77 (1979).

Appellant's final claim is that the district court improperly responded to a juror's question. Although Judge Carter's response may have been somewhat confusing, the clarification appellant requested would have put the court in the position of commenting on the evidence. This the judge was not required to do. Furthermore, we do not agree that his response foreclosed consideration of the evidence or that, in any event, the evidence could, on this record, have been regarded by the jury as significant. Thus, even if his response was in error, we find it to have been harmless.

Appellant's conviction is affirmed.