UNITED STATES of America, Appellee,

v.

Lloyd Granville HAYNES, Appellant.

No. 88–2277.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1989.

Decided Aug. 11, 1989.

Bruce Maloy, Atlanta, Ga., for appellant.

Linda L. Parker, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and HENLEY, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

Lloyd Granville Haynes appeals from a final judgment entered in the District Court[1] for the Western District of Missouri upon a jury verdict finding him guilty of one count of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and five counts of distribution of cocaine within 1,000 feet of a school in violation of 21 U.S.C. §§ 841(a)(1), 845a(a), (schoolyard statute). Haynes was found not guilty of operating a continuing criminal enterprise in violation of 21 U.S.C. § 848 and not guilty of two distribution counts. The district court determined that, under the federal sentencing guidelines (guidelines), Haynes's base offense level was 34, which was enhanced by six levels. A two-level increase was assessed because Haynes was in possession of firearms both prior to and at the time of his arrest. *See* Guideline § 2D1.1(b)(1). A four-level increase was assessed because the district court found that Haynes was the organizer and leader of a drug distribution scheme that involved five or more participants. *See* Guideline § 3B1.1(a). The district court found that Haynes's adjusted offense level was 40, criminal history category I, and found that the Guideline range of punishment was 292 to 365 months. Haynes was sentenced to concurrent terms of 240 months on the conspiracy count and 365 months on each of the distribution counts; was sentenced to six years supervised release; was fined a total of $250,000.00; and was ordered to pay a special assessment of $50.00 on each of the distribution counts.

For reversal, Haynes argues that the district court erred in (1) admitting into evidence testimony of Haynes's prior marijuana dealings, (2) instructing the jury on aiding and abetting in connection with the schoolyard statute, and (3) misapplying the sentencing guidelines in determining his sentence. For the reasons discussed be-

low, we affirm the judgment of the district court.

On December 10, 1987 Haynes was arrested following an extensive undercover investigation by the Kansas City Police Department Drug Enforcement Unit. The investigation culminated in a search of Haynes's residence at 5233 Cleveland, Kansas City, Missouri. A criminal complaint was filed on December 11, 1987, charging Haynes and five named codefendants with distribution of cocaine. On January 6, 1988 a nine-count indictment was filed in United States District Court against Haynes and his codefendants. The grand jury charged Haynes with engaging in a continuing criminal enterprise (CCE) from some time in 1986 to on or about December 10, 1987; with conspiracy to distribute cocaine with his codefendants and others from some time in 1986 to on or about December 10, 1987; and with seven counts of distribution of cocaine between October 8, 1987 and December 10, 1987, all of which occurred within 1,000 feet of a schoolyard. Haynes was charged with and convicted of violating the schoolyard statute as both a principal and an aider and abettor in violation of 18 U.S.C. § 2. As has been noted, Haynes was acquitted of the CCE count and two distribution counts and was convicted on all other counts.

The government's evidence established that Haynes operated a network of crack houses in Kansas City. Undercover purchases were made at houses located at 4278 E. 61st Street, 4256 E. 61st Street, 3815 East 58th Terrace, 4922 Olive, and 5644 Norton. Haynes also operated a crack house at 6637–39 South Askew. The house on Askew, a duplex, was rented for Haynes by a third party who moved into one of the units. The individual became concerned about the consequences of the duplex being rented in his or her name and informed the Kansas City Police of the drug trafficking activity there. On August 28, 1986 a search warrant was obtained for the Askew duplex after a surveillance offi-

---

1. The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

cer observed a Drug Enforcement Administration agent buy cocaine from an individual who first met with the agent, then went inside the Askew duplex and returned with cocaine which he delivered to the agent. Seized in the search were 153 grams of powder and crack cocaine, $20,000.00 in currency, drug paraphernalia, guns, and documents, including a paper with Haynes's phone number and Western Union Money Transfer Forms with the address of one of the 61st Street houses. Search warrants were also served at the Olive and Norton houses. Crack cocaine and firearms were found in those searches. Other evidence linking the crack houses to one another and to Haynes included the referral of undercover agents from one house to another when the supply of cocaine had run out at the first house, observations by undercover agents that Haynes associated with the occupants of the various houses, observations of Haynes picking up money at some of the houses, and letters seized in a search of Haynes's residence from two of the crack house workers who were serving federal prison terms in which letters they complained that Haynes was not taking proper care of them.

Between October 8, 1987 and December 10, 1987, Detective Rosilyn Morrison made a series of undercover cocaine buys from each of Haynes's five codefendants. Detective Morrison purchased cocaine from Haynes's codefendants on October 8, November 12, 19, 24, and 27, and December 4 and 10. On each occasion, the codefendants obtained the cocaine directly from Haynes. Haynes set the price and told the codefendants not to call him on the phone or bring anyone to his house. Haynes fronted the cocaine to his codefendants. After each sale they took the money to him, less the amount they kept for themselves. On one occasion, one codefendant acted as the go-between, delivering the cocaine to another codefendant and taking the money back to Haynes. Each sale to Detective Morrison and each delivery of the cocaine to the four female codefendants took place within 1,000 feet of J.S. Chick Elementary School. Haynes's residence was within 1,000 feet of the school property.

After the last buy on December 10, a search warrant was executed at Haynes's residence. The currency used during the buys on November 12, 19, 24 and December 4 was found hidden in a hole underneath the floor of Haynes's bedroom closet. The money from the December 10 buy was found on Haynes's bedroom floor. Also seized were drug paraphernalia, additional currency, and the aforementioned letters from the crack house workers in federal prison.

*Evidence of Haynes's prior marijuana dealings*

Haynes argues that the district court abused its discretion in admitting into evidence testimony from several of his co-defendants that he had operated "weed houses" from the mid–1970's to the mid–1980's. Haynes argues that this testimony was inadmissible because it did not tend to prove any issue in the trial. *See* Fed.R.Evid. 401, 402. Haynes argues alternatively that the testimony was inadmissible under Fed.R. Evid. 403 because "its probative value is substantially outweighed by the danger of unfair prejudice."

The government argues that the evidence of Haynes's involvement in the operation of weed houses during the 1970's was properly admissible under Fed.R.Evid. 404(b) as evidence that Haynes acted knowingly or intentionally and as evidence of a common scheme or plan. Alternatively, the government argues that the evidence was not other crimes evidence at all; rather, it was evidence of a continuing criminal enterprise and of Haynes's involvement in a conspiracy to distribute cocaine. The government premises its alternative argument on its contention that the operation of the drug houses was continuous from the 1970's with only the product line changing from marijuana to cocaine. We agree that the evidence of Haynes's prior marijuana dealings was properly admitted by the district court.

Evidence of other crimes and wrongful acts by a defendant is inadmissible if offered for the purpose of proving

propensity. Fed.R.Evid. 404(b). Such evidence, however, is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Other crimes evidence is admissible "if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act," *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988), and the evidence is otherwise admissible under the Federal Rules of Evidence, *see id.* 108 S.Ct. at 1502. The other criminal conduct must also "involve an offense similar in kind and reasonably close in time to the charge at trial." *United States v. Clemons*, 503 F.2d 486, 489 (8th Cir.1974). "The trial court is vested with broad discretion in deciding whether to admit wrongful act evidence," *United States v. Gustafson*, 728 F.2d 1078, 1083 (8th Cir.), *cert. denied*, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984), and "the decision to admit such evidence will only be reversed when it is clear that the questioned evidence has no bearing upon any of the issues involved at trial." *Id.* (citing *United States v. Marshall*, 683 F.2d 1212, 1215 (8th Cir.1982)).

■ In the instant case, the disputed evidence involves conduct that is remarkably similar to the conduct of which Haynes was accused. *See Clemons*, 503 F.2d at 489. Haynes's involvement in the operation of weed houses occurred over an extended period of time with no gap between the marijuana sales and the operation of the crack houses. *See id.* While the conduct may have reflected adversely on Haynes's character, it was admissible because it was relevant to the material issues of knowledge and intent, both of which are elements of the crimes for which Haynes was tried and convicted. *See United States v. Leisure*, 807 F.2d 143, 144–45 (8th Cir.1986) (evidence of prior marijuana dealings admissible to show that defendant knowingly joined conspiracy to distribute cocaine). It also tended to support the government's theory of an on-going drug distribution scheme. We are satisfied that the probative value of the evidence was not outweighed by its prejudicial effect. We hold, therefore, that the district court properly exercised its discretion in admitting the evidence of Haynes's prior operation of weed houses.

*Aiding and abetting instruction*

Haynes argues that it violates due process to convict him of violating the strict liability schoolyard statute as an aider and abettor. He argues that the district court erred in instructing the jury on aiding and abetting. According to Haynes, because there is no way of knowing whether the jury premised its findings of guilt on the allegedly improper instruction, such instruction must be presumed harmful and we should reverse his conviction on those counts. We disagree that the aiding and abetting instruction was error.

■ The schoolyard statute prohibits the distribution of controlled substances "in or on, or within one thousand feet of, the real property comprising a public or private elementary ... or secondary school." 21 U.S.C. § 845a(a). Knowledge by a defendant that the distribution occurred within the 1,000 foot zone is not required. *United States v. Holland*, 810 F.2d 1215, 1221–24 (D.C.Cir.), *cert. denied*, 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987); *United States v. Jones*, 779 F.2d 121, 123 (2d Cir.1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1236, 89 L.Ed.2d 344 (1986); *United States v. Falu*, 776 F.2d 46, 49–50 (2d Cir.1985). The Second Circuit, in a well-reasoned opinion, has held that the schoolyard statute is applicable to aiders and abettors. *Falu*, 776 F.2d at 48–49 (schoolyard statute makes no exception to the general rule that aiders and abettors are punishable as principals).

■ We hold that it did not violate due process to instruct the jury on aiding and abetting. Although knowledge is not an element to be proved in order to convict a defendant of violating the schoolyard statute, the statute "does not criminalize otherwise innocent activity, since the statute incorporates section 841(a)(1), which already contains a *mens rea* requirement...." *Falu*, 776 F.2d at 50. Because some sort

of knowledge or intent to do a criminal act is ultimately, albeit indirectly, required to be proved in order to convict a defendant of violating the schoolyard statute, "the schoolyard statute resembles other federal criminal laws, which provide enhanced penalties or allow conviction for obviously antisocial conduct upon proof of a fact of which the defendant need not be aware." *Id.* Here, there was evidence on each schoolyard count that the distribution of cocaine occurred within 1,000 feet of J.S. Chick Elementary School. Haynes's codefendants completed the cocaine transactions by distributing the drug obtained from Haynes to undercover Detective Morrison at either 4002 E. 53rd Street or 5316 Myrtle, both of which are located within 1,000 feet of the school. These distributions support Haynes's conviction as an aider and abettor.

Moreover, on November 12, 1987, Haynes distributed cocaine to one of his codefendants in front of the residence at 4002 E. 53rd Street, 306.1 feet from the school. On November 19, 24, and 27 and December 4, 1987, Haynes distributed cocaine to his codefendants at his residence at 5233 Cleveland, 881.8 feet from the school. This evidence supports Haynes's conviction as a principal in these transactions.

Because the evidence supported Haynes's conviction for violating the schoolyard statute as both a principal and an aider and abettor, and it was not otherwise erroneous for the district court to instruct the jury on aiding and abetting, Haynes's convictions for violating the schoolyard statute are affirmed.

*Sentencing issues*

Haynes argues that the district court erred in three different respects when it imposed sentence on him. We hold that the district court committed no error in its application of the federal sentencing guidelines in Haynes's case.

█ Haynes first argues that the district court erred in increasing his base offense level by four points through application of § 3B1.1 of the Guidelines. Section 3B1.1(a) allows such an increase if the "defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Haynes argues that because he was acquitted of the CCE charge, the government is collaterally estopped from continuing to litigate the issue of his alleged involvement in a CCE. *See United States v. Brown,* 547 F.2d 438, 443 (8th Cir.) (collateral estoppel barred a trial on conspiracy charge after defendant had been tried and acquitted of perjury when he denied before a grand jury that he had participated in conspiracy), *cert. denied,* 430 U.S. 937, 97 S.Ct. 1566, 51 L.Ed.2d 784 (1977). We disagree.

There are five elements which must be proved in order to convict a defendant of engaging in a CCE. *See* 21 U.S.C. § 848. Two of those elements—that the defendant's conduct must constitute a felony violation of the federal narcotics laws, 21 U.S.C. § 848(c)(1), and that the defendant must undertake the activity in concert with five or more persons, 21 U.S.C. § 848(c)(2)(A), overlap with, but are not exactly the same as, the two elements which the sentencing judge must find in order to warrant a four-part upward adjustment for the defendant's role in the offense. *See Iannelli v. United States,* 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975) (if each offense requires proof of fact that the other does not, separate punishment may be imposed "notwithstanding a substantial overlap in the proof offered to establish the crimes").

The district court is required by § 1B1.3 of the Guidelines to select a guideline range based on the defendant's "relevant conduct." Here, the district court found that Haynes was the organizer or leader of a criminal activity (the drug distribution scheme) that involved five or more participants. The district court acted properly in assessing Haynes's relevant conduct and in increasing his base offense level by four points based upon his role in the criminal activities.

█ Haynes next argues that the district court erroneously considered his criminal history even though his criminal history

category was determined to be I, the lowest possible category. The presentence investigation report (PSI) noted that Haynes had been arrested several times and that most of those arrests did not result in a conviction. The probation officer who prepared the PSI did not know whether Haynes had been represented by an attorney in the cases that resulted in conviction. *See Baldasar v. Illinois,* 446 U.S. 222, 223–24, 100 S.Ct. 1585, 1585–86, 64 L.Ed.2d 169 (1980) (per curiam) (plurality) (case remanded for resentencing where uncounseled misdemeanor was used to convert a second misdemeanor theft to a felony). Haynes suggests that because he was sentenced to the maximum of his guideline range, the district court must have improperly enhanced his sentence on the basis of his past arrests. We disagree.

In its Finding for Imposition of Sentence, the district court specifically stated that it "took into consideration the defendant's criminal history as outlined in paragraphs 49–65" of the PSI. Paragraph 49 states unequivocally that Haynes has no known criminal convictions. Paragraphs 50–65 outline Haynes's arrest record, including the disposition of those arrests. The district court, in reliance on those paragraphs, found that criminal history category I was the correct criminal history category to use in determining Haynes's sentence. The district court did nothing improper here. It accepted the probation officer's evaluation of Haynes' criminal record, *i.e.,* that Haynes had no known criminal convictions, and sentenced Haynes accordingly. Haynes's sentence is within the acceptable guideline range for an adjusted offense level of 40, criminal history category I.

■ Haynes next argues that the district court arbitrarily manipulated the guidelines by converting both the total amount of powder cocaine and the total amount of currency seized in the search of his residence into crack cocaine. The conversion of the powder cocaine and money into crack cocaine resulted in a base offense level of 34 as opposed to one of 16 had the conversions not been made. Haynes argues that not all of the cocaine was being sold as

crack and that it is illogical to assume that all of the money seized came from the sale of crack. We disagree.

■ Our review of the findings of fact relied upon by the district court in imposing sentence is conducted under the clearly erroneous standard. 18 U.S.C. § 3742(d). In the instant case, Haynes's codefendants testified that powder cocaine was kept buried in the yards of the crack houses and was dug up and converted to crack to be sold when the crack supply at the house ran out. The district court believed this and other evidence tending to prove that Haynes was in the business of selling crack cocaine and not powder cocaine and properly relied on its factual finding to that effect when determining Haynes's base offense level. The district court further found that the money recovered in the search of Haynes's residence represented profits from the sale of crack. We are not left with a definite and firm conviction that this factual finding was wrong. The money was recovered in a search of what proved to be the residence of the operator of several crack houses and was found in circumstances that led one to believe that it represented illicit profits from the operation of those crack houses. The district court found that its overall computation of the amount of crack cocaine involved in the counts of conviction was a conservative computation and, given the evidence in this case, we do not disagree with its finding.

The district court committed no error either in the conduct of Haynes's trial or in imposing sentence on Haynes.

Accordingly, the judgment of the district court is affirmed.