**UNITED STATES of America,**

v.

**Jerome Vincent ROBERTS, et al., Defendants.**

**No. 89 Cr. 0892 (RWS).**

United States District Court, S.D. New York.

April 6, 1990.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Theodore E. Chervin, Asst. U.S. Attys., of counsel), for U.S.

Federal Defender Services Unit The Legal Aid Soc., New York City (Paul Davison, of counsel), for defendants.

OPINION

SWEET, District Judge.

Defendant Jerome Roberts ("Roberts") has moved pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure for acquittal on Count II of the indictment on which he was convicted by jury on the ground that in the absence of an intent to distribute a controlled substance within 1000 feet of a school, the "schoolyard statute", 21 U.S.C. § 845a(a) is not proven. For the reasons set forth below, the motion is granted.

*Prior Proceedings*

On February 1, 1990, Roberts was convicted by jury of both conspiracy to distribute cocaine and possession of cocaine with intent to distribute within 1,000 feet of a school. At the close of the government's case Roberts made a Rule 29(a) motion. The decision of the motion was postponed despite the Second Circuit's ruling in *United States v. Bruno*, 873 F.2d 555 (2d Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 125, 107 L.Ed.2d 86 (1989) that a Rule 29(a) motion "requires a prompt decision so that a defendant does not bear the risk of presenting evidence that might cure an otherwise fatal defect in the government's case." *Id.* at 562. Finding that the policy concerns present in *Bruno*, as well as *United States v. Neary*, 733 F.2d 210 (2d Cir.1984), were not present in this case, and recognizing the novel issue before the court and the careful consideration required, the Rule 29(a) motion was postponed for decision after the jury verdict. Following the jury's verdict, the court extended Roberts' time for filing this motion until February 23, 1990. Oral argument was heard on March 9, 1990 and this motion was considered fully submitted as of that date.

*Facts*

On November 7, 1989, Roberts and two others, Michael Brock ("Brock") and Carla Saunders ("Saunders"), were arrested at Penn Station in New York City. All three were charged with conspiracy to distribute approximately thirteen ounces of cocaine and possession with intent to distribute the cocaine. Brock and Saunders subsequently pleaded guilty to conspiracy and testified for the government at Roberts' trial.

At trial, Brock testified that he and Roberts acquired the cocaine in Harlem on the morning of November 7, 1989, that Roberts hid the drugs inside his jacket, and that the two then returned to a Days Inn in midtown Manhattan where they had stayed the previous night. According to Brock, he

---

1. The original version of § 845a(a) read in pertinent part:

> Any person who violates section 841(a)(1) of this title by distributing a controlled sub-

and Roberts returned to the hotel to pick up Saunders, to transfer the cocaine to a backpack, and then to summon a taxi. All three then proceeded to Penn Station, where Saunders, while carrying the drug-filled bag, was arrested when trying to board a train to Wilmington, Delaware. Roberts and Brock were arrested outside the station.

Both Brock and Saunders testified that they along with Roberts had conspired to travel from Wilmington to buy drugs in New York City, and then bring them to Wilmington for sale. Although the government proved that the Days Inn was within 1,000 feet of the John Jay College of Criminal Justice, no evidence was adduced that Roberts intended to distribute the cocaine at or near the Days Inn or elsewhere in New York City.

*The Statute*

Title 21 U.S.C. § 845a(a) provides an enhanced penalty for:

> Any person who violates section 841(a)(1) or section 856 of this title **by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of ... a public or private college....**

21 U.S.C. § 845a(a) (emphasis added). When first enacted in 1984, the schoolyard statute provided an enhanced penalty for *distributing* drugs within 1000 feet of a school.[1] In 1986, Congress expanded the scope of § 845a(a) to insert "or manufacturing" after "distributing" where it appeared in the statute and by expanding the types of educational institutions to include "a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university." 132 Cong.Rec. H11219–02 at § 1104 (1986). In 1988 Congress amended the section once again to insert ", possessing with intent to distribute," after "distributing." 134 Cong.Rec. S15785–01 at § 2254 (1988). The amendment also created an additional

---

stance in or on, or within one thousand feet of, the real property comprising a public or private elementary or secondary school is....

100–foot protective zone surrounding playgrounds, youth centers, public swimming pools, and video arcade facilities. See 21 U.S.C. § 845a(b).

There is no legislative history accompanying the amended statute and scant legislative history surrounding the original version. In a trial before the Honorable Louis L. Stanton, Judge Stanton raised *sua sponte* the issues presented here. His opinion, issued pursuant to a 29(a) motion at the close of the government's case and discussed below, is the only existing case law on the question posed by Roberts.

*Statutory Construction*

Pursuant to the canons of statutory construction, when interpreting the meaning of a statute, courts turn first to the language of the statute. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring), *reh'g denied*, 423 U.S. 884, 96 S.Ct. 157, 46 L.Ed.2d 114 (1975). *See United States v. Bonanno Org. Crime Family of La Cosa Nostra*, 879 F.2d 20, 21 (2d Cir.1989) (citing *Netherlands Shipmortgage Corp. Ltd. v. Madias*, 717 F.2d 731, 731 (2d Cir.1983). The ascertainment of a "plain-meaning" sometimes may require consideration of persuasive extrinsic evidence. *See Watt v. Alaska*, 451 U.S. 259, 266, 101 S.Ct. 1673, 1677–78, 68 L.Ed.2d 80 (1981). To give effect to congressional intent a court may look at legislative history or the context of the disputed language in the statutory scheme. *See Bonanno*, 879 F.2d at 24 (citing 2A *Sutherland Statutory Construction* § 46.05 (4th ed. 1984)). Despite the construction tools courts apply, there exist circumstances where courts will be unable to determine congressional will with certainty. *United*

*States v. Capano*, 786 F.2d 122, 128 (3rd Cir.1986).

*Plain Meaning*

■ Roberts contends, and the government disputes, that the language of the relevant amendment to the statute is ambiguous in that it can be understood as either applying to defendants who possess narcotics within 1000 feet of a school, regardless of where they intend to distribute the drugs, or as reaching only those defendants who intend to distribute within 1000 feet of a school the drugs they possess within 1000 feet of a school.

Judge Stanton held that the statute was ambiguous on its face in *U.S. v. Liranzo*, 729 F.Supp. 1012, 613 (S.D.N.Y.1990) and that holding is followed here. The statute does not read "possession, with intent to distribute within 1000 feet of a school," nor does it read "possession within 1000 feet of a school, with intent to distribute within 1000 feet of a school," nor does it read "possession within 1000 feet of a school with intent to distribute anywhere."[2] Instead, Congress chose simply to incorporate the provision of § 841(a)(1) and to place it within the schoolyard statute that previously provided an additional penalty only for distributing within 1000 feet of a school. The amended version thus provides an enhanced penalty for the three forms of behavior listed: distributing, possessing with intent to distribute, and manufacturing—all intended to be modified by the 1000 feet requirement. Accordingly, although placement of the modifier next to the gerund "possessing" may have clarified intent, the listing of three gerunds followed by a single modifier is neither "unnatural"[3] nor necessarily indicative of congres-

**2.** Neither the Government nor Roberts contends that the grammar, syntax, or punctuation compels a conclusion that Congress intended one meaning over the other. Removal of the "with the intent to distribute" phrase would still leave the statute syntactically correct.

**3.** The *Liranzo* Court found that the "more natural reading" of the statute indicates that the phrase "within one thousand feet of" would normally modify the verb [sic] closest to the modifying phrase and thus had Congress meant for the statute to punish possessing with intent

to distribute anywhere in the United States the statute would have read "possessing, within one thousand feet of a school, with intent to distribute a controlled substance ..." *Liranzo*, 729 F.Supp. at 1014. Although this phrasing would have been more clear, the existing phrasing is not "unnatural" given that the phrase "possessing with intent to distribute" is in the middle of a list of three gerunds all of which were intended to be modified by the phrase "within one thousand feet." Thus, just because Congress did not see fit to repeat the phrase "within 1000 feet of a school" three times in a single sentence

sional intent.[4]  It is simply unclear.

*Congressional Intent*

Despite the admitted absence of legislative history the government makes an attempt to elucidate, if not create, congressional intent from the act of the amendment of the statute.  The government contends that while the statute initially encompassed only distribution, the expansion to cover both the activities of possessing with intent to distribute and manufacturing indicate a willingness to afford even greater protection to schoolchildren and "shows that Congress intended the widest possible application of the statute."  Additionally, Congress sought to extend this protection beyond schoolchildren to all who attend varying types of educational institutions.  Thus, reasons the government, "congress created a boundary surrounding these institutions which drug dealers would cross at their peril."

To support this proposition, the government proffers this circuit's conclusion in *United States v. Falu*, 776 F.2d 46, 48 (2d Cir.1985), that Congress meant the schoolyard statute to "send a signal to drug dealers that we will not tolerate their *presence* near our schools."[5]  Id. at 48 (quoting 130 Cong.Rec. S559 (daily ed. January 31, 1984) (statement of Sen. Paul Hawkins)) (emphasis added).  Indeed, in considering various challenges to the original statute, the Second Circuit repeatedly has construed § 845a(a) broadly.  *See United States v. Ofarril*, 779 F.2d 791, 792 (2d Cir.1985) (defendants need not know they are within 1000 feet of school; 1000 feet may be measured as crow flies rather than pedestrian route), *cert. denied*, 475 U.S.

1029, 106 S.Ct. 1231, 89 L.Ed.2d 340 (1984); *United States v. Jones*, 779 F.2d 121, 123 (2d Cir.1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1236, 89 L.Ed.2d 344 (1986) (statute applies to defendant who sells drugs to adult, in evening, at bar located away from school); *United States v. Agilar*, 779 F.2d 123, 125–26 (2d Cir.1985) (§ 845a does not violate the Due Process Clause), *cert. denied*, 475 U.S. 1068, 106 S.Ct. 1385, 89 L.Ed.2d 609 (1986); *Falu*, 776 F.2d 46, 49 (statute applies to an aider and abettor who does not actually distribute or control the distribution of narcotics; statute does not require knowledge of school's location).

These decisions do reflect a pattern of broad application of the statute.  They do not, however, establish legislative history on the amended version or compel the government's interpretation on the question presented here.  All of these cases interpret the original version of the statute and in so doing all were concerned with distribution, the only activity proscribed by the original version.  *See also United States v. Dixon*, 619 F.Supp 1399, 1400 (schoolyard statute violates neither due process nor equal protection where defendant distributed within 1000 feet of school at night in summer month when school not in session); *United States v. Nieves*, 608 F.Supp. 1147, 1149 (S.D.N.Y.1985) (discussing schoolyard statute as substantially related to congressional purpose to prevent narcotics *"sales"*, to punish *"the seller"* and those who *"ply"* narcotics) (emphasis added).

Consequently, all of these cases concern transactions and the need to keep the 1000 foot zone free from drug *transactions*.

---

when it certainly intended the enhancement to apply to "distributing" and "manufacturing" as well as to "possessing", the placement of the modifier cannot be read to compel the defense's interpretation.

4.  Placement of the modifier is even less reliable as an indicator of congressional intent when, as here, Congress has amended this statute piecemeal to arrive at the current string of gerunds all followed by the modifying prepositional phrase.

5.  The Court in *Liranzo*, relying upon the Second Circuit's interpretation in *Falu* of the original statute's legislative history, concluded that the

"purpose of the statute was to 'deter drug distribution in and around schools,' including 'transactions' which took place near where students gather ..." *Liranzo*, 729 F.Supp. at 1014 (citing *Falu*, 776 F.2d at 50 (quoting 130 Cong.Rec. S559 (daily ed. January 31, 1984) (statement of Sen. Paula Hawkins))).  Noting that the circuit decided *Falu* prior to the amended version of the statute at issue here and in *Liranzo,* we read the *Liranzo* opinion to mean that this language counters the government's proposition that the statute sought to punish the mere "presence" of drug dealers within 1000 feet of a school.

Likewise, the reported schoolyard cases under the amended version to date have concerned transactions, *see, e.g., United States v. Haynes,* 881 F.2d 586, 591 (8th Cir.1989) (defendant who distributed cocaine to codefendants 306.1 and 881.8 feet from school convicted); *United States v. Byrd,* 837 F.2d 179, 180 (5th Cir.1988) (defendant distributed cocaine within 1000 feet of school), even where the defendant was charged with possession with intent to distribute. *See, e.g., United States v. Hernandez,* 1988 WL 108444 (S.D.N.Y.1988) (distribution of heroin within 1000 feet of school). Moreover, where a court incants the now familiar *Falu* language that the schoolyard statute was to create a "drug-free zone" it still invariably refers to those who *deal* and *narcotic transactions,* not mere existence of drugs within the 1000 foot zone. *See, e.g., United States v. Watson,* 887 F.2d 980, 981 (9th Cir.1989) (noting that *dealers* would escape prosecution if 1000 feet measured by circuitous routes to their *narcotics transactions*); *United States v. Holland,* 810 F.2d 1215, 1219 (D.C.Cir.1987) (concurring in "recitations of congressional purpose," and finding enhanced punishment of *transactions* rationally related to purposes of § 845a), *cert. denied,* 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987).

Finally, the Government argues that congressional intent to create a drug-free zone that would prevent mere possession near the school is also implied by the Congress's amendment to prevent mere manufacturing near schools, regardless of where the manufactured drugs are distributed. The government's point regarding "manufacturing" is well-taken. This gerund is not modified by any "intent to distribute" language. Nonetheless, the argument is unconvincing. Distributing, manufacturing, and possessing with intent to distribute are all forms of behavior leading to the *supply* of drugs within the vicinity of the school. As such, Congress's addition of this activity is consonant with the interpretation that Congress sought to prevent drug supply in the vicinity of schools, it does not support the interpretation that the 1000 foot zone must be completely "drug-free." If Congress wanted to provide an enhancement penalty for anyone with drugs who penetrated the "drug-free" zone Congress could have sought to provide an enhancement penalty for other types of behavior, for example, mere possession, or consumption within 1000 feet of the school.[6] Accordingly, it is inferred that Congress did not intend the enhanced penalties of the statute to apply when there is no evidence establishing that the defendant intends to possess with intent to distribute, or to supply drugs, within 1000 feet of the school.

The government argues that the large number of cases in which authorities arrest defendants before any actual distribution occurs would prevent the Government from obtaining any proof of whether the defendant intended to distribute the drugs and that Congress could not have intended such an "onerous and impractical" burden. The

---

**6.** Were the statute to prohibit mere possession within 1000 feet of a school with intent to distribute anywhere, a car driving by any of several schools anywhere with a defendant intending to distribute at some point in time at an unspecified location would be subject to the enhanced penalty. *Liranzo,* 729 F.Supp. at 1014 n. 1. The government responds that Congress sought to erect a "cordon sanitaire" to bar dealers from even fleetingly or accidentally passing within 1000 feet of a school. Accordingly, states the government, the interpretation rationally relates to the maintenance of this zone because dealers who merely possess drugs that are intended to be distributed elsewhere could be followed by someone brandishing an "uzi" shooting wildly at innocent bystanders or dealers may accidentally drop some of their "stash." Accepting these scenarios, a rational nexus between the punishment provided and the government's interpretation would exist only if one were to accept that the purpose of the statute was the creation of an antiseptically "drug-free zone" as opposed to the prevention of the supply of drugs to those attending or who may gather near a school. Moreover, were the prevention of these scenarios Congress's intent, mere possession would have been proscribed as well. Whereas distribution relates to supply and manufacturing implies both a foothold or some establishment leading to the supply of drugs within the vicinity of the school, possessing, while passing through the zone, with intent to deliver elsewhere, does no more to adulterate the zone with a supply of drugs than a smoker with an unopened pack of cigarettes does to adulterate a non-smoking section or zone.

set of all defendants to which the statute may apply is limited by the defense's interpretation that those defendants who possess within 1000 feet of a school but intend to distribute elsewhere are not covered by the statute. This interpretation, however, does not preclude application of this provision to all but those who actually distribute controlled substances within 1000 feet of the school. As with the rest of the elements of this offense, the government may be able to establish intent to distribute within 1000 feet of a school through circumstantial evidence of the defendant's intent, or through direct confession, or through coconspirators or codefendants who knew of the destination of the disputed narcotics and decide to confess or to cooperate, as was the case here.

Finally, the government argues that § 845a(a) incorporates § 841(a)(1) and thus adopts the general intent requirement of § 841(a)(1). *See United States v. Haynes,* 881 F.2d at 590–91 ("Although knowledge is not an element to be proved in order to convict a defendant of violating the schoolyard statute, the statute 'does not criminalize otherwise innocent activity, since the statute incorporates section 841(a)(1), which already contains a *mens rea* requirement....'") (quoting *Falu,* 776 F.2d at 50). According to the government, if Congress had intended to create "a specific intent as to time and place" it knew how and could have employed an additional intent requirement but instead chose to adopt the same intent requirement of § 841(a)(1). Thus, argues the government, the crime of possession with intent to distribute is complete when an individual possesses a controlled substance with the intent to distribute it, no matter where, because of the limited general intent required by § 841(a)(1) and Congress's failure to indicate any additional intent requirement.

Courts, however, often interpret criminal statutes to contain varying *mens rea* requirements for different elements of the offense even where Congress has failed to indicate varying intent levels. *See United States v. Nofziger,* 878 F.2d 442, 450 (D.C. Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 564, 107 L.Ed.2d 559 (1989). More importantly, the question presented is not one of general versus specific intent, or for that matter even relating to the intent requirement. Roberts does not argue that he needed to know that he was possessing within 1000 feet of a school and or that he needed to know that there was a school in the vicinity in order to intend to distribute near a school. Indeed, as noted above, those questions have been resolved by this circuit.

Instead, Roberts questions whether the phrase "within 1000 feet" modifies the prepositional phrase "with intent to distribute" as well as the gerund "possessing." This is not a question of additional intent on the defendant's part, it is only a question of the geographic target of that intent. Roberts need not have intended to distribute the drugs in any particular geographic location, nor does he need to know that he is distributing within 1000 feet of a school. Instead, the government need only show that the location where Roberts did intend to distribute the drugs was actually within 1000 feet of a school. For the defendant's conduct to fall under the statute, the government must only apply an objective, measurable fact—that where the defendant intended to distribute was actually within 1000 feet of a school—of which the defendant need not ever be aware. *Cf. United States v. Haynes,* 881 F.2d at 591 (citing *Falu,* 776 F.2d at 50) (statute provides for enhanced penalties for conduct "upon proof of a fact of which the defendant need not be aware"). Accordingly, interpretation of the statute in this way does not modify or even implicate the intent requirement.

*The Rule of Lenity*

█ When a court's interpretation of a criminal statute fails to eliminate a perceived ambiguity concerning the ambit of the statute, the rule of lenity dictates that the ambiguity be resolved in favor of the defendant. *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1985); *Nofziger,* 878 F.2d at 452; *United States v. McKeithen,* 822 F.2d 310, 315 (2d Cir.1987); *United States v. Capano,* 786 F.2d 122, 128 (3d Cir.1986); *Liranzo,* 729 F.Supp. at 1014. This rule of strict con-

struction derives not from compassion for the defendant but from the dual policy considerations of giving fair warning of what the law prohibits and of deferring to the legislature's assessment of the penalties befitting criminal conduct. *Nofziger*, 878 F.2d at 452; *Capano*, 786 F.2d at 128. Nonetheless, "the rule is not to be applied where to do so would conflict with the implied or expressed intent of Congress," but only where congressional purpose remains ambiguous. *Liparota v. United States*, 471 U.S. 419, 427, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985).

The government maintains that the rule of lenity is not triggered here because "there can be no uncertainty about Congress' intent to expand the reach of § 845a(a) to envelope all the narcotics-related activity proscribed by § 841(a)(1), and therefore no uncertainty that 845a(a) applies to a defendant who possesses drugs with intent to distribute, within 1000 feet of a school, irrespective of where he intends to distribute the drugs...." The perceived ambiguity and the dearth of legislative history, however, trigger the rule of lenity and dictate that this statute be read to require intent to distribute the drugs within 1000 feet of the school.

For the foregoing reasons, Roberts' conviction on Count II is set aside.

It is so ordered.