**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Eddie Vincent WALKER,
Defendant–Appellant.**

**No. 92–50223.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1993.

Decided May 19, 1993.

As Amended July 2, 1993.

Harriet L. Hawkins and Myra Sun, Deputy Federal Public Defenders, Los Angeles, CA, for defendant-appellant.

Bart H. Williams and Miriam Krinsky, Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellee.

Before: SCHROEDER, THOMPSON, and O'SCANNLAIN, Circuit Judges.

SCHROEDER, Circuit Judge:

Eddie Vincent Walker appeals his conviction and 248–month sentence under the United States Sentencing Guidelines, following a jury trial, for possession with intent to distribute cocaine within 1,000 feet of a secondary school in violation of 21 U.S.C. §§ 841(a)(1) and 860, and carrying a firearm during the commission of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Walker's most serious challenge is to the increase of his offense level under U.S.S.G. section 2D1.2 for drug trafficking within 1,000 feet of a secondary school. He contends that the enhancement should apply only if the offense directly involved the school or its students and not to possession of drugs inside a house near a school. We discuss this and Walker's other challenges which include the admissibility of a notebook and the sufficiency of the evidence. We affirm on all grounds.

## I. BACKGROUND

On October 4, 1991, agents executed a federal search warrant for an apartment in Compton, California. The apartment is located less than 150 feet from Compton High School. An agent yelled "police with a search warrant. Open the door." No one responded. The agents then made a forced entry into the apartment. Walker was lying on a living room couch with his hands up in the air. The agents found a fully loaded .25 caliber semiautomatic gun near the couch where Walker was lying.

Agents then handcuffed Walker, conducted a pat-down search and searched the apartment. During the pat-down search an agent discovered a key ring in Walker's pants pocket. The key ring had eleven keys including keys that opened the inner and outer doors to the apartment and three upstairs bedroom doors. Additionally, two keys were for a pickup truck owned by Walker, which was parked outside the apartment. In the kitchen area, agents found a razor blade, an Ohaus triple beam scale, a loaded .25 caliber firearm magazine, .25 auto ammunition, a box of .357 magnum ammunition, a cellular phone, a piece of mail addressed to Walker at a different address, thirteen small baggies

containing rock cocaine, twelve baggies of marijuana, and $190.00 in cash.

The agents also found a spiral notebook on the kitchen table. The notebook contained, among other things, various beeper numbers including Walker's beeper number, numerous references to drugs and drug dealing, and eighteen different references to the defendant's name or nickname, "Stretch." Agents found little food in the kitchen, a scant amount of clothing belonging to Walker, and a few other items of Walker's.

Agents also searched the three upstairs bedrooms. In one bedroom agents found a brown paper bag. Inside it were a large plastic bag with twenty small plastic bags containing a total of 30.25 grams of cocaine base and thirteen small bags holding marijuana. In another bedroom, agents found a shoebox that contained six large clear plastic bags on the closet shelf, one bag holding thirty-six smaller bags each containing rock cocaine, another bag holding thirty-two smaller bags containing rock cocaine, and three bags each holding over 100 smaller bags of marijuana.

Walker was charged and convicted of possession with intent to distribute cocaine within 1,000 feet of a secondary school and possession of the .25 caliber semi-automatic weapon during the offense. The court sentenced Walker to 248 months in prison and ten years supervised release. Walker's sentence was based in part on a two-level increase in the base offense level because the illegal conduct took place within 1,000 feet of a school.

## II. SENTENCE ENHANCEMENT

■ Walker contends that the district court erred by enhancing his base offense level pursuant to U.S.S.G. § 2D1.2, which applies to drug offenses "directly involving" a protected location. Specifically, he argues that section 2D1.2 is inapplicable because there was no evidence that his connection with the controlled substance directly involved Compton High School or its students. However, when the provisions of the Guideline are read together, they make it clear that they relate to a protected geographic zone and that the government need not prove that Walker intended to distribute to students.

Section 2D1.2(a)(1) provides for a two-level increase in a defendant's offense level for "controlled substances directly involving a protected location." It is one of alternative provisions. Section 2D1.2 provides in full:

*Drug Offense Occurring Near Protected Locations or Involving Underage or Pregnant Individuals; Attempt or Conspiracy*

(a) Base Offense Level (Apply the greatest):

(1) 2 plus the offense level from § 2D1.1 applicable to the quantity of controlled substances directly involving a protected location or an underage or pregnant individual; or

(2) 1 plus the offense level from § 2D1.1 applicable to the total quantity of controlled substances involved in the offense; or

(3) 26, if the offense involved a person less than eighteen years of age; or

(4) 13, otherwise.

The first two of these alternative provisions should be read together. The first directs that *two* offense levels be added to the level appropriate for the quantity of controlled substances "directly involving a protected location or an underage or pregnant individual." The second directs a *one* level increase to the offense level applicable to the "total quantity of controlled substances involved in the offense."

Clearly the phrase "directly involving a protected location" in subsection (a)(1) is intended to distinguish that quantity from the "total quantity" of controlled substances involved in the offense. Thus, the distinction drawn by the Guideline is between drugs actually sold or possessed near the location and those drugs that are part of the same course of conduct but are sold or possessed outside the protected area. In this way, the Guideline sets forth a framework for calculating an enhancement when only some of the drugs at issue "involve" a protected location. The "directly involving" language serves a different purpose than that urged by Walker. It does not matter whether the drugs were sold on school property or to school children,

or whether the drugs were merely possessed near the protected location by someone unconnected to the school. It suffices that the drugs are present within 1,000 feet of the school.

This interpretation is buttressed by the Application Note in the Commentary to section 2D1.2, which draws the distinction between heroin sold near a protected location and heroin sold "elsewhere." The application note provides:

*Application Note:*

1. Where only part of the relevant offense conduct directly involved a protected location or an underage or pregnant individual, subsections (a)(1) and (a)(2) may result in different offense levels. For example, if the defendant, as part of the same course of conduct or common scheme or plan, sold 5 grams of heroin near a protected location and 10 grams of heroin elsewhere, the offense level from subsection (a)(1) would be level 16 (2 plus the offense level for the sale of 5 grams of heroin, the amount sold near the protected location); the offense level from subsection (a)(2) would be level 17 (1 plus the offense level for the sale of 15 grams of heroin, the total amount of heroin involved in the offense) (emphasis added).

Accordingly, we conclude that any drug offense committed within 1,000 feet of a school is one that "directly involves" a protected area for purposes of section 2D1.2.

## III. ADMISSION OF NOTEBOOK INTO EVIDENCE

■ Walker contends that the district court erred by admitting the notebook as indicia of criminal activity in the apartment because a notebook would not show the character of the apartment in which it was found. Alternatively, he argues that the district court's limiting instruction was insufficient to overcome the undue prejudicial effect of admitting the notebook because the government presented testimony regarding Walker's fingerprints and handwriting in the notebook. These contentions lack merit.

We have held that a drug-related document may be properly admitted into evidence to show the character and use of the place where it was found, provided there is a proper limiting instruction to prevent the jury from assuming matters contained in the document are true. *United States v. Jaramillo-Suarez*, 950 F.2d 1378, 1383–84 (9th Cir. 1991). In addition, "such evidence may [only] come in if there is a sufficient showing of relevance and authenticity and if its probative value outweighs undue prejudice." *United States v. Huguez-Ibarra*, 954 F.2d 546, 552 (9th Cir.1992); *see also United States v. Sitton*, 968 F.2d 947, 958 (9th Cir. 1992) (any prejudice to defendant not unfair where admission of evidence "directly relevant to charges in the indictment"), *cert. denied*, —— U.S. ——, 113 S.Ct. 478, 121 L.Ed.2d 384 (1992).

The notebook was sufficiently authenticated and relevant for a number of reasons: it was found in the apartment near drugs, firearm ammunition, cash, and drug paraphernalia; it contained numerous references to Walker and drug deals; and it corroborated the testimony of the special agent regarding the suspected drug trafficking. *See Huguez-Ibarra*, 954 F.2d at 552–53 (notebooks authenticated and relevant where found in safes with cocaine and documents bearing defendants' names, and corroborated by testimony of government agents). In addition, the district court properly instructed the jury that the notebook was being admitted to show the character of the place found, rather than the truth of any matter asserted therein. *See Jaramillo-Suarez*, 950 F.2d at 1384 (limiting instruction regarding admission of "pay/owe" sheet for purpose of showing nature of apartment where it was found proper; court instructed jury at time of admission and at close of evidence).

Accordingly, the district court did not abuse its discretion by determining that the notebook was sufficiently authenticated and relevant to come into evidence, and the court adequately guarded against the risk of unfair prejudice by giving an appropriate limiting instruction.

## IV. SUFFICIENCY OF EVIDENCE

Walker contends that the evidence was insufficient to show that he had dominion and control over any of the drugs or carried a gun during a drug trafficking offense. *See United States v. Castillo*, 866 F.2d 1071, 1086 (9th Cir.1988); *see also United States v. Martinez*, 967 F.2d 1343, 1345–46 (9th Cir. 1992).

■ Mere proximity to the drug, presence on property where it is found, and association with a person or persons having control of it are all insufficient to establish constructive possession. *United States v. Vasquez–Chan*, 978 F.2d 546, 550 (9th Cir.1992). Nonetheless, "[p]ossession and knowledge can be established by circumstantial evidence." *Castillo*, 866 F.2d at 1086.

■ Here, when viewed in the light most favorable to the government, the evidence demonstrated more than Walker's mere presence in the apartment. Walker possessed keys to the inner and outer doors of the apartment and the three bedrooms where drugs were found. BATF agents found Walker's clothes and shoes, a receipt bearing his name, and a large sum of cash near the drugs in one bedroom. The agents also found packages of drugs, a triple beam scale, a razor blade, a drug ledger, and a cellular phone in the kitchen area.

■ Walker also challenges sufficiency of the evidence to support the firearm conviction. "In order to convict the defendant of a violation of 18 U.S.C. § 924(c)(1), the government must prove beyond a reasonable doubt that the defendant: (1) knowingly used or carried a firearm ... (2) during and in relation to a drug trafficking crime." *Martinez*, 967 F.2d at 1346; *see also United States v. Torres–Medina*, 935 F.2d 1047, 1050 (9th Cir. 1991).

Here, the BATF agents found the fully loaded .25 caliber semiautomatic gun near the couch where Walker was lying. Additionally, the agents found a loaded firearm magazine, a box of .357 magnum 110 grain ammunition and .25 auto ammunition in the kitchen area. Further, there was nobody else present in the apartment.

Based on the close proximity of both the gun and ammunition to drugs, and the gun's location near the couch where Walker had been lying, a rational jury could have found beyond a reasonable doubt that Walker was prepared to use the gun to defend his possession of the drugs in the apartment. *See Martinez*, 967 F.2d at 1347 (sufficient evidence where firearm found in bedroom in which drugs were located); *see also Torres–Medina*, 935 F.2d at 1050 (sufficient evidence where firearm found in crawl space below the house in which drugs were located); *Castillo*, 866 F.2d at 1088 (sufficient evidence where firearm found beneath the mattress directly underneath the defendant's body in the bedroom in which drugs were located).

## V. MINOR ROLE ADJUSTMENT

■ Walker contends that the district court erred by denying him a downward adjustment in his offense level for being a minor or minimal participant in the offense because "there was no evidence to link ... [him] to the sales from the house nor was he one of the individuals named or referred to in the affidavit in support of the search warrant." Again we reject Walker's argument.

The Guidelines allow a two to four-level downward adjustment in the base offense level when a defendant's minor or minimal role in the offense renders him less culpable than most other participants. U.S.S.G. § 3B1.2. Here, in both of Walker's counts of conviction, he was the sole participant found guilty at jury trial. Walker was the only defendant involved in both counts of conviction. No clarification of his role was needed because no evidence of a larger conspiracy was offered at trial or at sentencing. Accordingly, the district court did not err by denying him a minor role adjustment.

The conviction and sentence are AFFIRMED.