**UNITED STATES of America,**
**Appellee,**

v.

**Oscar GARCIA, Defendant–Appellant.**

**Docket No. 02–1049.**

United States Court of Appeals,
Second Circuit.

Oct. 11, 2002.

Samantha L. Schreiber, Assistant United States Attorney (Alan Vinegrad, United States Attorney, on the brief, David C. James, Assistant United States Attorney, of counsel), United States Attorney's Office for the Eastern District of New York, Brooklyn, NY, For Appellee.

Sarita Kedia, Law Office of Gerald L. Shargel, New York, NY, For Appellant.

Present OAKES, CABRANES, Circuit Judges, LORETTA A. PRESKA,* District Judge.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and hereby is **AFFIRMED.**

Defendant Oscar Garcia appeals from a judgment of the United States District Court for the Eastern District of New York entered on January 11, 2002. After a first jury trial ended in a mistrial, Garcia was convicted in a second jury trial of possessing with the intent to distribute heroin within 1,000 feet of a school (21 U.S.C. §§ 841(a), 841(b)(1)(B), 860(a)), and conspiring to possess with intent to distribute heroin (21 U.S.C. §§ 846, 841(b)(1)(B); 851(a)(1)). He was sentenced principally to 168 month's imprisonment and eight years of supervised release. On appeal from his second jury trial, Garcia argues that: (1) he failed to receive the effective assistance of counsel; (2) the trial court erred by admitting evidence from a warrantless search of his car; (3) the trial court erred in admitting evidence of his prior narcotics conviction; and (4) the trial court erroneously imposed two sentencing guidelines enhancements.

The testimony of DEA agents at both Garcia's first and second trials established the following facts: Garcia was arrested on February 1, 2001 as part of a DEA investigation initiated when a confidential source informed agents that a heroin sale was going to take place at a church located near the intersection of 80th Street and 25th Avenue in Queens, New York. The

---

* The Honorable Loretta A. Preska, of the United States District Court for the Southern District of New York, sitting by designation.

source indicated that the sale would involve a Hispanic woman in her fifties driving a Blue Dodge minivan. At approximately 1:55 P.M., Jorge Ledesma and Lilia Grizales drove up to Our Lady of Fatima Parish Church in a blue minivan, parked the car, and entered the church. Shortly thereafter, agents observed defendant Garcia leaving the church. Garcia later returned to the church carrying a green plastic bag. Garcia and Grizales then exited the church and walked over to the blue minivan, where they appeared to be leaning into the van. When the green plastic bag disappeared from view, the DEA agents moved in and arrested both Grizales and Garcia. The agents searched the minivan and found the green bag, which contained approximately 125 pellets of heroin weighing 998 grams. The agents then confiscated Garcia's car keys and used the locking device to locate Garcia's car, which was parked one block away. The agents searched Garcia's car and found $9,950 in cash wrapped in rubber bands. The car was taken to the DEA field office.

In his first trial, Garcia took the stand in his own defense. He testified that he had left $9,950 in cash in his car because he was planning to go to a Honda dealership to buy his wife a car as a surprise. His plans changed, he testified, when he received a call on his cellular telephone asking him to meet Grizales at a church on 25th Avenue and 80th Street so that he could show her the Marriott Courtyard Hotel near LaGuardia Airport, where he had thrown a baptism party for his daughter on February 28, 1998. Garcia testified that he never delivered anything to Grizales and that he had not seen until the day of trial the green plastic bag in which the heroin was discovered. Because his knowledge of the contents of the would-be package was not in issue, the Court did not allow the government to introduce evidence that Garcia's prior felony conviction

was for a heroin-related offense (defense counsel had already brought out the existence of a prior conviction on direct examination). After the prosecution had finished its closing arguments, Garcia moved to reopen the case so that he could submit additional evidence, namely two business cards from an employee at the Honda dealership, some brochures from the car dealership, a parking ticket from the vicinity of the dealership, and an invitation to Garcia's daughter's baptism party at the Marriott Courtyard Hotel on February 27, 1999. The Court originally denied the motion to reopen, but the Court ultimately granted a mistrial in order to allow Garcia to submit this new evidence without prejudicing the prosecution.

In Garcia's second trial, the government again called several DEA agents to testify about the events of February 1, 2001. The government also presented the English translation of a tape recording of a telephone conversation between Garcia and a female friend, recorded while Garcia was incarcerated at the Metropolitan Detention Center (MDC) in Brooklyn. During that phone call, Garcia stated that he was arrested while doing a woman a favor by putting something—he did not know what—in her car. This statement was in contrast to his statement in the first trial that he had never seen or handled the green bag and that, if he had, he would have known whether it contained heroin. Because the Court found that his knowledge of the contents of the bag was in issue in the second trial, the Court allowed the government to introduce evidence of Garcia's prior heroin conviction for the purpose of showing that Garcia had knowledge of the contents of the bag. The Court did not, however, allow the government to reveal that Garcia was carrying $12,000 in cash at that time. In the second trial, Garcia did not take the stand and

did not present the evidence he had attempted to present at the conclusion of the first trial; the only defense witness was Vernon Phipps, a private investigator who discussed the area where the church was located.

At the conclusion of the second trial, Garcia was convicted on both counts. At sentencing, the Court applied two individual two-point enhancements to Garcia's sentence under the Guidelines. The Court applied an initial two-point enhancement because the relevant heroin transaction took place within 1,000 feet of a school. The Court also applied a second two-point enhancement for obstruction of justice because he determined that Garcia had committed perjury on the witness stand in his first trial when he stated that he had never seen or touched the green bag containing heroin.

## I. Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are reviewed *de novo. United States v. Blau,* 159 F.3d 68, 74 (2d Cir.1998). A defendant making such a claim must show both: (1) that "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington,* 466 U.S. 668, 688–89, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

Garcia claims that he received ineffective assistance of counsel in that he was "precluded from testifying by defense counsel without being fully informed as to his fundamental right to testify and without a knowing and voluntary waiver of that right." Def.'s Br. at 4. *See Brown v. Artuz,* 124 F.3d 73, 79 (2d Cir.1997) ("[C]ounsel must inform the defendant that the ultimate decision whether to take the stand belongs to the defendant. . . .")).

This error, Garcia argues, was prejudicial because it deprived him of "an explanation for his presence in the vicinity of the narcotics and for the cash found in his car," as well as the ability to introduce the corroborating evidence that he had sought to present at the end of the first trial. Def.'s Br. at 26–27.

■ However, even assuming that Garcia's conclusory assertion that he was denied the right to testify is true, Garcia cannot demonstrate ineffective assistance of counsel because he cannot show that there is a reasonable probability that the result of the proceeding would have been different had he testified. *See Brown,* 124 F.3d at 80–81 (declining to determine whether a "conclusory allegation" that a defendant was prevented from testifying raised an issue of fact where defendant could not demonstrate prejudice). Garcia's defense faced significant problems whether or not he testified. Had he testified, Garcia could have stated, consistent with his testimony in the first trial, that he was not carrying any green bag, that he had $9,950 in his car for the purpose of purchasing a new automobile, and that he was headed with Ms. Grizales to the Marriot Courtyard near LaGuardia Airport. However, Garcia's testimony would have contradicted his own statements made to a female friend while in prison in which he stated that he was helping Ms. Grizales put something in her car and that he did not know what was in the package. Furthermore, it seems unlikely that the jury would have believed his explanation as to the $9,950 in his car, considering that he left the money in the car unattended while he went into the church, and that Ms. Grizales had a bag of heroin worth between $60,000 and $80,000 in her car, at a time when both parties were purportedly en route to the Marriot Courtyard to examine a social function room. The addi-

tional evidence Garcia hoped to submit—a parking ticket from the vicinity of the Honda dealership, business cards and advertisements from the dealership, and an invitation to his daughter's Baptism on a different date from that he had specified in the first trial—would not likely have been persuasive in light of the absence of Garcia's name from the list of prospective customers at the relevant Honda dealership, a fact the prosecution elicited through a rebuttal witness in the first trial. And had Garcia changed his testimony during the course of his second trial, he could have been impeached with his testimony from the first trial. Indeed, under the circumstances, Garcia's not taking the stand may well have been the preferable course.

## II. Admission of Evidence from the Search of Garcia's Car

■ Evidentiary rulings are reviewed under an abuse-of-discretion standard of review. *United States v. Dhinsa*, 243 F.3d 635, 649 (2d Cir.2001). Garcia argues that the trial court abused its discretion by failing to suppress the fruits of a purportedly illegal, warrantless search of Garcia's car, in which $9,950 in cash was uncovered. However, automobiles may be searched without a warrant where a law enforcement office has "reasonable or probable cause to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search." *Dyke v. Taylor Implement Mfg. Co.*, 391 U.S. 216, 221, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968) (internal quotation marks omitted); *see United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985). The existence of probable cause generally depends on whether "given all the circumstances ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d

527 (1983). The trial court ruled that the search of Garcia's car was based on probable cause because "it was not speculation to believe both objectively, and I think in this case subjectively, that there was some evidence to be found in the gentleman's car under the circumstances as you have agreed they existed immediately prior to the search that would if necessary assist them in the prosecution of Mr. Garcia." (Letter of Assistant U.S. Attorney David C. James, Esq. to the Court of June 28, 2002 (quoting transcription of Court's comments)) We agree.

At the time that Garcia's car was located and searched, Garcia and Grizales had already been arrested for exchanging a bag that contained 125 pellets (nearly 1 kilogram) of heroin. This transaction was uncovered as a result of a tip from confidential informant who had specifically told agents that a narcotics transaction was going to take place involving a Hispanic woman in her fifties driving a blue minivan. The agents surveilling the area had observed Garcia exit the church, drive away in a car, and then subsequently returned to the church carrying a green bag, which was later determined to contain heroin. Under those circumstances, the agents had ample probable cause to believe that contraband might be located in defendant Garcia's car. It was not unreasonable for officers to conduct an immediate search, particularly in light of the possibility that large quantities of heroin or implements of the drug trade might have been located in the vehicle, parked on a public street one block away from a church and school. Because the agents' search of Garcia's car was lawful, it was not error for the trial court to admit evidence obtained from that search.

## III. Admission of Evidence of Garcia's Prior Narcotics Offense

Federal Rule of Evidence 404(b) bars evidence of previous crimes, wrongs or bad

acts to prove the character of a person or action in conformity with that character. Such evidence may, however, be admitted for other purposes, such as to show, *inter alia,* knowledge or the absence of mistake or accident in the commission of a crime.

■ Garcia argues that it was an abuse of discretion for the trial court, in his second trial, to admit evidence of defendant's prior conviction for heroin possession because knowledge was not in issue. However, the trial court allowed the jury to hear evidence of Garcia's prior conviction because:

> The probative value of it in this trial, unlike the last trial ... here, from the jailhouse conversation, there is obviously evidence from which the defendant can argue that, yes, he had the narcotics in his hand, but, as he told his—the person with whom he was talking to in South America, he didn't know what was in it....
>
> And since that automatically raises a mere-presence defense, it's nothing that the defense counsel could say[ ] which would mean that the jury wouldn't consider the possibility that he was telling the truth in this conversation....
>
> [The] issue is in the case as to whether he knew what was in the bag or not. And the evidence that some three years earlier, he had been arrested and convicted of a crime involving plastic bags containing a significant quantity of heroin certainly has a bearing on the question of whether he would take a bag under these circumstances into his hand without knowing or finding out what was in the bag.

(Second Trial Transcript ("Tr.2") at 524) The District Court further ruled that under Rule 403 the probative value of this evidence outweighed the potential prejudice of introducing Garcia's conviction. The Court made substantial efforts to limit

any prejudice associated with this evidence by refusing to allow the prosecution to reveal that agents had found $12,000 in his car at the time of his prior arrest, and by instructing the jury that evidence of Garcia's prior conviction was to be used only for the purpose of knowledge, and not to prove a propensity to engage in criminal activity. We do not believe that Judge Sifton's limiting instructions to the jury, as Garcia claims, were unduly confusing.

The trial court's decision to admit evidence of Garcia's prior convictions was not an abuse of discretion. Regardless of what defendant's counsel did or did not argue with respect to a knowledge defense, Garcia's jailhouse phone conversation placed the question of knowledge squarely in issue because the jury could have believed his statement that he did not know what was in the bag. This is particularly the case because Garcia did not, as he did in the first trial, take the stand to assert under oath that he had never seen the bag before and that if he had carried the bag, he would have known whether or not it contained heroin. Even if the District Court could possibly have reached another conclusion regarding the admissibility of this evidence, the conclusion it reached was well within the bounds of its discretion and should not be disturbed. See *United States v. Pitre,* 960 F.2d 1112, 1119 (2d Cir.1992) ("To find abuse, the appellate court must conclude that the district court acted arbitrarily and irrationally.")

## IV. Sentencing Enhancements

In reviewing the application of the provisions of the Sentencing Guidelines, we review the District Court's finding of facts for clear error, but we review the application of the Guidelines to those facts *de novo,* giving due deference to the sentencing court. *United States v. Lewis,* 93 F.3d 1075, 1079 (2d Cir.1996). At defendant's

sentencing, the District Court enhanced Garcia's sentence through two two-point upward adjustments, both of which defendant claims were in error.

■ First, the trial court enhanced Garcia's sentencing range by two points because his narcotics offense occurred within 1,000 feet of a school. Garcia argues that the legislative purpose behind the enactment of 21 U.S.C. § 860—which provides for enhanced sentences for drug crimes committed within 1,000 feet of certain protected locations—was to "protect school-age children from the dangers posed by the sale of narcotics and to deter drug distribution in schools." Def.'s Br. at 48 (citing *United States v. Falu*, 776 F.2d 46, 50 (2d Cir.1985); *United States v. Liranzo*, 729 F.Supp. 1012, 1014 (S.D.N.Y.1990); *United States v. Nieves*, 608 F.Supp. 1147, 1149 (S.D.N.Y.1985)). Garcia claims that his activities do not qualify for the enhancement because he did "no more to adulterate the [school] zone with a supply of drugs than a smoker with an unopened pack of cigarettes does to adulterate a non-smoking section or zone." *United States v. Roberts*, 735 F.Supp. 537, 541 (S.D.N.Y.1990). (Def.'s Brief at 49) However, unlike cases in which the enhancement was not applied to a defendant merely carrying drugs through a protected location to be sold elsewhere, *see, e.g., Roberts*, 735 F.Supp. at 540; *Liranzo*, 729 F.Supp. at 1014, this case involves a narcotics transaction that actually took place in the protected location.

In cases where a defendant actually engaged in a narcotics transaction within the protected location, this Circuit has permitted a sentencing enhancement, even where that transaction did not directly implicate the school, school children, or the protected location. For example, in *United States v. Washington*, 48 F.3d 73 (2d Cir. 1995), the Court held that a drug dealer who sold drugs from his apartment which was located 1,000 feet from a school was covered by the provision. *Id.* at 81; *see also United States v. Smith*, 13 F.3d 860, 868 (5th Cir.1994) (holding that a drug transaction need not directly involve the protected location to render defendant eligible for a sentencing enhancement); *United States v. Echevaria*, 995 F.2d 562, 564–65 (5th Cir.1993) (same); *United States v. Walker*, 993 F.2d 196, 198–99 (9th Cir.1993) (same). To apply the enhancement in this case is consistent with congressional intent. Even though the sale did not involve school children in this case, "since the sale occurred within 1,000 feet of a school, it increased the risk that drugs would become accessible to school children." *United States v. Jones*, 779 F.2d 121, 123 (2d Cir.1985). Congress's purpose in enacting 21 U.S.C. § 860 was to decrease such a risk. Accordingly, the District Court's two-point enhancement is affirmed.

■ The trial court also adjusted Garcia's sentencing range two points upward because it found that Garcia had obstructed justice through perjury in his first trial when he stated that he was not carrying a green bag. The Court stated as follows:

> [The] enhancement is appropriate if only for the defendant's perjury with respect to his possession of the narcotics and the bag in which the narcotics were contained and uncontradicted except for the defendant's testimony, uncontradicted testimony of the surveilling agent together with the defendant's own admissions and the recorded statements satisfies me beyond a reasonable doubt that the defendant committed perjury when he stated that the did not have hands on possession of this bag.

Gov't Br.App. at 13. In light of the evidence relied upon by the District Court, in particular the direct conflict between Garcia's statements under oath and those he made in his jailhouse phone call, as well as

the uncontradicted testimony of three different agents, the Court's conclusion was not error, much less clear error. See *United States v. Lincecum,* 220 F.3d 77, 80 (2d Cir.2000) (holding that the determination that defendant committed perjury is a finding of fact that cannot be reversed unless it is clear error). The Court's well-founded finding that Garcia intentionally committed perjury was sufficient to justify a sentencing enhancement for obstruction of justice.

We have reviewed all of the defendant's arguments. For the reasons set forth above, the judgment of the District Court is hereby **AFFIRMED.**