

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-2-2007

# USA v. Mitchell

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4214

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Mitchell" (2007). *2007 Decisions.* Paper 825.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/825

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4214

UNITED STATES OF AMERICA

v.

JOSEPH MITCHELL, also known as, JOSEPH WADDY

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 04-cr-00603
District Judge: Hon. Bruce W. Kauffman

Submitted under Third Circuit LAR 34.1(a)
on February 1, 2007

Before: BARRY and ROTH, Circuit Judges
IRENAS*, District Judge

(Filed: July 2, 2007)

OPINION

---

*The Honorable Joseph E. Irenas, United States District Judge for the District of New Jersey,
sitting by designation.

**ROTH,** <u>Circuit Judge</u>:

Joseph Mitchell was indicted on and convicted of a single charge of possessing a firearm with the serial number defaced, in violation of 18 U.S.C. § 922(k). Mitchell challenges his conviction on a variety of grounds. For the reasons set forth below, we will affirm the judgment of the District Court.

## I. <u>Background</u>

On August 24, 2004, at approximately 6:25 in the morning, a team of federal agents and Philadelphia police officers executed a search warrant, issued by a state court, at a Philadelphia row house. They knocked on the door and announced their authority and purpose. When they received no response, they forced entry. The agents reported that inside, in a darkened living room, they found Joseph Mitchell sitting on a couch, dressed but with his shoes off, and with foodstuff strewn about. Also, Mitchell was holding a large gun.

According to the agents, they ordered Mitchell to drop his weapon, which they later identified as a loaded MAC-11 semiautomatic pistol. Mitchell initially complied, but then engaged in a struggle with them. He was eventually taken into custody, but required medical attention for injuries sustained in the struggle. A second man, a juvenile, was found lying on the floor in the same room; he was also taken into custody. A third man was found lying in an upstairs bedroom.

With the house secure, the agents conducted a search. In addition to the MAC-11 that Mitchell was holding, the agents found a Glock pistol on the floor next to the couch on which

Mitchell had been sitting. An agent examined the couch and discovered that the cushions were sewn permanently to the base, but that there was a large tear in the stitching. Inspecting the tear, the agent found a secret weapons cache inside the couch. The tear was large enough for a person sitting on the couch to reach in and pull out a weapon, including one the size of the MAC-11. Three additional handguns were retrieved from this cache, bringing the total to five handguns found in the vicinity of the couch. All five were loaded. One of the guns from inside the couch, a Ruger .45 caliber pistol, was missing its serial number. Where the serial number should have been, there was visible discoloration due to the gouging or grinding necessary to remove the number. The other four handguns all had their serial numbers intact. The Ruger did not bear Mitchell's fingerprints.

In addition to the handguns, agents also found a bulletproof vest, which was on a dining room table. Mitchell's state-issued identification card, which listed his address as that of the row house, was found near the bulletproof vest on the same table. The agents also found a small quantity of marijuana, as well as other documents belonging to Mitchell and listing the address of the row house, including his voter registration card, social security card, and current bills.[1] The agents found no evidence that the other two people found in the house resided there.

Through interviews, police were able to obtain additional information. When detectives interviewed Mitchell, he stated that he lived with his girlfriend on Spruce Street,

---

[1]According to Mitchell, some of the items bearing his name belonged to his uncle, whose name is also Joseph Mitchell and who formerly resided at that same address.

some distance away from the house where he was arrested. Mitchell also supplied the detectives with a false name, identifying himself as "Joseph Waddy."[2] During the defendant's case, testimony was introduced that the row house belonged to members of Mitchell's family and that Mitchell had lived there in the past. Mitchell's girlfriend testified that Mitchell had been living with her for several years in her home, approximately three blocks away from the house where he was found (and not located at the Spruce Street address supplied by Mitchell). She stated that in the early morning of August 24, 2004, between midnight and two-thirty, she and Mitchell had an argument which caused Mitchell to leave her home. He was wearing only a t-shirt, jeans, and shoes. His girlfriend testified that she never saw Mitchell with any of the guns found, never knew him to go by the name "Joseph Waddy," and did not know of any other girlfriend who lived at the Spruce Street address.

On September 14, 2004, a grand jury in the Eastern District of Pennsylvania returned an indictment of Mitchell, charging him with possession of a firearm with an altered and obliterated serial number, in violation of 18 U.S.C. § 922(k).[3] A knowing violation of §

---

[2]Mitchell also identified himself as "Joseph Waddy" at the hospital where he was taken for medical attention after being arrested. At the hospital, however, Mitchell listed his home address as the house where he was arrested and the weapons were cached.

[3]18 U.S.C. § 922(k) provides:

It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

922(k) is grounds for imposition of a fine, imprisonment for a term of not more than five years, or both. 18 U.S.C. § 924(a)(1)(B). Prior to trial, Mitchell filed a motion to suppress physical evidence on the grounds that the warrant was unsupported by probable cause, was overly broad, and improperly executed. Mitchell also filed a motion *in limine* to bar certain evidence as violating Federal Rule of Evidence 404(b). The District Court denied both motions.

On April 13, 2005, following a three-day trial, the jury found Mitchell guilty of violating § 922(k). Mitchell filed a motion to vacate the verdict, which the District Court denied. On September 9, 2005, the District Court imposed a sentence of 23 months' imprisonment, a term of supervised release of three years, and a special assessment of $100. Mitchell timely appeals.

## II. Jurisdiction

The District Court had subject matter jurisdiction over this case pursuant to 18 U.S.C. § 3231 because Mitchell was charged with a violation of federal criminal law. We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## III. Discussion

Mitchell argues that his conviction should be overturned on appeal because the jury's verdict of guilty was unsupported by sufficient evidence. "We review the sufficiency of the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *United States v. Pritchard*, 346 F.3d 469, 470 n.1 (3d Cir. 2003) (internal quotation marks omitted). Our review is deferential, as it is not our place to weigh evidence or determine credibility, and a defendant must bear a heavy burden to establish that the evidence was insufficient. *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). Moreover, we may sustain a conviction even when the government's case rests entirely upon circumstantial evidence. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006).

Mitchell contends that the government presented insufficient evidence to establish that he knowingly possessed the Ruger pistol on which his conviction is based. Under § 922(k), the government had to establish either actual or constructive possession of the Ruger. "A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it." *United States v. Garth*, 188 F.3d 99, 112 (3d Cir. 1999) (emphasis and citations omitted). A defendant's dominion and control over an item need not be exclusive, though dominion and control cannot be established by the defendant's mere physical proximity to the item in question. *Id.* at 112, 113.

Based on the evidence presented to the jury, a rational juror could have concluded that Mitchell knowingly possessed the Ruger. Mitchell tries to analogize his case to *United States v. Brown*, 3 F.3d 673 (3d Cir. 1993), and *United States v. Jenkins*, 90 F.3d 814 (3d Cir. 1996), but these cases are inapt. *Brown* involved a defendant who resided in a home owned

6

by her co-defendant and who could not be linked to the drugs underlying her conviction because none of the drugs were found in her room of the house. We held that the evidence was insufficient to find that Brown exercised dominion and control over the drugs because none could be linked to her. 3 F.3d at 680-81. Similarly, *Jenkins* involved a defendant who was found seated at a coffee table with the tenant of the apartment. Inside the coffee table were drugs, paraphernalia, and firearms. We held that because nothing beyond mere physical proximity linked Jenkins to the contents of the coffee table, dominion and control could not be established. 90 F.3d at 819. By contrast, Mitchell was found sitting directly on top of the hidden weapons cache in a house in which he contemporaneously received mail, with access to the weapons through a tear in the stitching and with a MAC-11 in hand and a Glock on the floor nearby. A rational juror easily could have inferred a link to the Ruger of the sort that was lacking in *Brown* and *Jenkins*.

In addition to finding that Mitchell knowingly possessed the Ruger, the jury also had to find beyond a reasonable doubt that Mitchell knew the Ruger was defaced. *United States v. Haywood*, 363 F.3d 200, 206 (3d Cir. 2004). A rational juror could have so found. The Ruger was alone among the weapons in missing a serial number, and its defacement left the weapon with visible discoloration. All five weapons were loaded, meaning that someone had to handle them. Having found that Mitchell possessed the Ruger, a rational juror could have inferred that Mitchell loaded it and noticed the visible discoloration.

We have also reviewed Mitchell's claims that evidence of the four guns with serial

numbers intact, the bulletproof vest, and his struggle with the arresting agents was not admissible; that the search warrant was defective and improperly executed; and that the jury instructions were erroneous.  We find all these contentions to be without merit.

## IV.  Conclusion

For the reasons set forth above, we will AFFIRM the judgment of the District Court.