**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1477
_____

UNITED STATES OF AMERICA

v.

RICHARD WINN,
                                        Appellant
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 2-17-cr-00651-002)
District Judge:  Honorable R. Barclay Surrick
_____

Argued
January 19, 2022

Before:  JORDAN, RESTREPO, and PORTER, *Circuit Judges*

(Filed: March 4, 2022)
_____

Christopher G. Furlong   [ARGUED]
22 E. Third Street
Media, PA   19063
        *Counsel for Appellant*

Meaghan Flannery
David Metcalf
Robert A. Zauzmer   [ARGUED]
Office of United States Attorney
615 Chestnut Street – Suite 1250
Philadelphia, PA   19106
          *Counsel for Appellee*

————————————

OPINION[*]

————————————

JORDAN, *Circuit Judge*.

Richard Winn appeals two of his three convictions, both for offenses predicated on his possession of a firearm.  He challenges those two on several grounds, but none are persuasive, so we will affirm.

## I.    BACKGROUND

Law enforcement officers in Philadelphia were on the hunt for a particular firearm when, in September 2017, they determined that it was likely being kept in a house they believed was also the site of drug activity.  They obtained a search warrant for the house and executed it at around 6:30 a.m. on September 15.

When they entered, Winn was standing near the front door, close to and "moving towards" the combined living and dining room area, which was several feet away from the door.  (JA2 at 79-80.)  Winn had not been on the investigators' radar prior to that moment, and the detectives did not know why he was at the house.  After detaining

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Winn,[1] the officers moved through the house. In a bedroom upstairs, they found Ameen Green, who they had previously learned was involved in providing a gun to another person under investigation. (JA3 at 111-12.) Officers then brought Green downstairs.

At that point, the search began in earnest. On the dining room table were crack cocaine, marijuana, narcotics packaging, and other drug paraphernalia. A few feet away from the table and from where Winn was found, there was a closed cabinet that contained a box. Inside the box were two firearms (one of them disassembled), a bag of ammunition, marijuana, and packets that resembled those containing drugs found elsewhere in the house. One of the guns in the box matched the description of the weapon that the officers had been hoping to find in the house.

The search yielded additional evidence elsewhere in the house. In the kitchen and the upstairs bedrooms, the officers found marijuana, crack cocaine, and heroin, along with more drug packaging and paraphernalia. They also found ten cellphones, most of them near the cabinet that contained the guns. Other than a few personal items in the upstairs bedroom, the house did not seem like a place where people lived but rather had the appearance of a "stash house" – a place used for storing and distributing drugs. Detectives did not find anything belonging to Winn in the house except for one of the

---

[1] Detectives testified at trial that Winn and Green were "secured" (JA2 at 82, 90-92, 98-99), but the record is unclear as to whether and when any physical restraint was applied.

3

phones,[2] nor did they uncover evidence of any prior contacts Winn had with the house or with the guns found in the box. But, when Winn was placed under arrest, and as officers were preparing to take him and Green to the police station, Winn asked a detective to get his keys from the house. The detective then retrieved from the kitchen a lanyard bearing the name "Richard." When he realized that one of the keys on the lanyard fit the lock in the front door of the house, the officer retained the lanyard and keys for evidence.

Detectives later searched the phones and found several dozen text messages on one of them. Three incoming messages were addressed to "Rich" – presumably Winn. Some messages appeared to include requests to buy drugs. One incoming message read, "10 a.m. Ameen!!" – Green's first name. (JA3 at 34.)

Officers also obtained, and played at trial, a couple of calls Winn made from prison three days after his arrest. In one of the calls, Winn told a friend that he was being held in the same facility and "on the same block" as Green. (SJA at 3.) He also said, "I don't even know what they really said, they put on us. … I know they ain't put the guns. I know … it's all narcotics." (SJA at 5.)

Winn was indicted jointly with Green and charged with possession with intent to distribute cocaine base, heroin, and marijuana, and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and (b)(1)(C), and 18 U.S.C. § 2; possession of a firearm in furtherance of a drug trafficking crime and the aiding and

---

[2] Detectives were unable to definitively link the phone to Winn. Before us, however, Winn does not dispute that the jury could have reasonably believed that the phone was his, given the multiple text messages addressed to "Rich" found on it.

abetting of that, in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2; and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1). That last count was predicated on Winn's three prior convictions for drug offenses in Pennsylvania state court.

The parties agreed to bifurcate the trial, allowing a jury to reach a verdict on the first two charges (and thus to find whether Winn possessed a firearm) and allowing the District Court to adjudicate the felon-in-possession charge. After a three-day trial, Winn was convicted on all counts.

While Winn was awaiting sentencing, the Supreme Court held in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), that a prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2) requires proof that a defendant knew that he fell into a category of persons barred from having a gun when he possessed it. Winn then moved for a new trial, arguing that his felon-in-possession conviction was improper under *Rehaif* because prosecutors had not alleged in the indictment or proven at trial that he knew he was a felon. Since Winn had not raised that objection at trial, the District Court reviewed for plain error, and it ultimately denied the motion.

At sentencing, the District Court found that Winn's prior state-court convictions qualified him for the "armed career criminal" enhancement pursuant to 18 U.S.C. § 924(e) and sentenced him to 300 months' imprisonment. Winn has timely appealed.

## II.  DISCUSSION[3]

Winn does not challenge his drug possession conviction, but he raises three objections to his gun convictions.  He says first that his felon-in-possession conviction was plain error under *Rehaif*; next, that there was insufficient evidence of his firearm possession to support the convictions on the two gun counts; and finally, that the District Court erroneously enhanced his sentence under the Armed Career Criminal Act ("ACCA").

We can most readily dispose of Winn's first claim.  While his appeal was pending, the Supreme Court held in *Greer v. United States* that a defendant bringing a plain-error *Rehaif* claim must "argue[] or ma[k]e a representation that [he] would have presented evidence at trial" that he did not know he was a felon, such that he shows a "reasonable probability" that the outcome would have been different but for the error.  141 S. Ct. 2090, 2098 (2021).  Winn did not even attempt to make such a showing.  As his counsel conceded at argument, *Greer* forecloses his plain-error argument.

Winn's other two arguments merit more detailed analysis, but both nonetheless fail.

### A.  Sufficiency of the evidence

Winn challenges the sufficiency of the evidence underlying his firearm convictions, arguing that the government failed to offer proof beyond a reasonable doubt

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

that he possessed the guns found in the box in the cabinet. We review the sufficiency of the evidence underlying a conviction to see if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). Our review is "highly deferential," and we take care "not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury[.]" *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (citation omitted). Where the record may support "multiple possibilities," we draw all rational inferences in the prosecution's favor. *Id.* at 430-32.

Possession of an object, such as a firearm, can be actual or constructive. *See United States v. Caldwell*, 760 F.3d 267, 278 (3d Cir. 2014) (possession of a firearm for purposes of § 922(g)(1) can be constructive); *United States v. Walker*, 657 F.3d 160, 172 (3d Cir. 2011) (same for § 924(c)). As Winn points out, the government offered no proof that he actually "exercised direct physical control over the weapon[s,]" *Caldwell*, 760 F.3d at 278, so the government needed to establish constructive possession. Such possession exists when the defendant "knowingly has both the power and the intention at a given time to exercise dominion or control over" the contraband. *United States v. Brown*, 3 F.3d 673, 680 (3d Cir. 1993) (citation omitted). We have held that there must be more than "mere proximity" to the contraband or "mere presence on the property where it is located" to establish dominion and control. *Id.* at 680 (citation omitted).

7

Here, a rational trier of fact, viewing the record in the light most favorable to the government, could find that more than mere proximity or presence tied Winn to the firearms. Winn concedes, for example, that there was enough evidence – including the text messages suggesting his involvement in drug sales – for jurors to infer that he had possession of the drugs found all over the stash house. The same kinds of drugs and packaging found all over the house were also in the box right alongside the guns. That evidence, taken together, could reasonably be interpreted to show that the guns were part and parcel of the drug operation with which Winn was intimately involved.[4]

Although Winn claims a lack of proof that he had ever previously been to the house, he had a key to it on his lanyard, allowing him access at any time. *Cf. Brown*, 3 F.3d at 683-84 (noting that "[p]ossession of the key to [a] crack house" would provide evidence "that the defendant was involved with the drugs found therein"). He rightly points out that the government does not know who else may have had a key, but the government is entitled to have us view his possession of a key in the light most favorable to the verdict – as evidence of his ready access to the contraband within the house.

The prison call also helps support the verdict. There, Winn said he didn't think the government had "put the guns" on him. (SJA at 5.) Both sides in this appeal understand Winn to have been expressing a belief that he was not facing any charges relating to the firearms. Although he ended up being wrong in that belief, Winn's

---

[4] Winn also argues that Green had more significant ties to the house and the guns than he himself did. Constructive possession, however, "need not be exclusive but may be shared with others." *United States v. Davis*, 461 F.2d 1026, 1035 (3d Cir. 1972).

statement reveals that, at least as of three days after his arrest, he knew about the guns in the house. His counsel suggests that he could have learned about them from Green in prison, or at his preliminary hearing. And we do not know whether Winn saw the guns during the search of the house. The government, meanwhile, says that a reasonable jury could infer that if Winn knew of the guns three days after the search, he also knew about them before the search. We need not resolve which narrative is more persuasive, as our deferential standard requires us to interpret inferences from the call in the government's favor and accept Winn's statement as reflecting his knowledge of the guns being present as part of the drug dealing in which he was involved.

While the lack of direct evidence connecting Winn to the firearms makes this case a close one, we are mindful of the deference we must give the jury verdict. *See Caraballo-Rodriguez*, 726 F.3d at 430-32. Together, when viewed in the light most favorable to the verdict, the evidence presented at trial was enough to allow a reasonable jury to find that Winn had constructive possession of the guns.

**B.     Armed career criminal enhancement**[5]

Finally, Winn argues that he should not have been subject to a sentencing enhancement as an armed career criminal. The ACCA imposes a mandatory minimum sentence of fifteen years on those who violate § 922(g) and have three prior convictions for a "violent felony" or a "serious drug offense." 18 U.S.C. § 924(e)(1). A "serious

---

[5] We review an armed career criminal designation *de novo*. *United States v. Preston*, 910 F.2d 81, 84 (3d Cir. 1990).

9

drug offense" includes a state-law offense "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance" that carries a maximum sentence of at least ten years. *Id.* § 924(e)(2)(A)(ii). Winn had three prior convictions for violations of 35 Pa. Stat. § 780-113(a)(30), which bans "the manufacture, delivery, or possession with intent to manufacture or deliver, [of] a controlled substance[.]" In a decision that Winn concedes is dispositive, *United States v. Daniels*, 915 F.3d 148 (3d Cir. 2019), we have held that a violation of that statute constitutes a serious drug offense.

Winn nevertheless objects to his sentencing enhancement for two reasons. He first points to the First Step Act of 2018, which modified the predicate offenses for a different sentencing enhancement under 21 U.S.C. § 841(b). As amended, § 841(b) increases the sentences of certain offenders who previously committed a "serious drug felony," defined as an offense under § 924(e)(2) – that is, a "serious drug offense" or a "violent felony" under the ACCA – that also meets two additional requirements. 21 U.S.C. § 802(57).[6] Winn claims that his prior convictions would not satisfy those additional requirements and thus can no longer be ACCA predicates. But the First Step Act did not change the meaning of a "serious drug offense" under the ACCA. It simply borrowed that phrase

_____

[6] Section 802(57) requires, in relevant part, that a serious drug felony be an offense for which "the offender served a term of imprisonment of more than 12 months; and … the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense." 21 U.S.C. § 802(57).

and combined it with other requirements to establish the new "serious drug felony" term. Winn's state-law convictions were, and remain, serious drug offenses under the ACCA.

Winn next cites out-of-circuit decisions holding that attempt crimes do not qualify for the enhancement for "controlled substance offenses" under the Sentencing Guidelines, despite Guidelines commentary to the contrary. Those cases have no relevance here. The term "serious drug offense" in the ACCA has a different meaning, and there is no conflict here between any commentary and the statutory text. Moreover, as Winn acknowledges, we have already read the ACCA to "encompass[] attempts" and concluded that even attempt crimes under 35 Pa. Stat. § 780-113(a)(30) count as ACCA predicates. *Daniels*, 915 F.3d at 149, 160-63.[7]

## III. CONCLUSION

Winn has failed to identify any reversible error in his convictions or sentence. We will therefore affirm.

---

[7] The Supreme Court's subsequent decision in *Shular v. United States*, 140 S. Ct. 779 (2020), took a different approach than we did in *Daniels*. The Court held that a state-law crime is a serious drug offense if it necessarily entails "the *conduct* of 'manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance.'" *Id.* at 784-87 (citation omitted). That abrogated our analytical approach in *Daniels*, where we compared the elements of § 780-113(a)(30) to those of a "generic ACCA crime[.]" *United States v. Daniels*, 915 F.3d 148, 151 (3d Cir. 2019). But even under *Shular*, the arguments Winn has made do not require a different bottom-line conclusion than the one we reached in *Daniels*.

PORTER, *Circuit Judge*, concurring.

I join the panel's opinion in full. But I write separately because I do not believe this to be a close case. In reaching this conclusion, I highlight the outsized influence of *United States v. Brown* in constructive possession cases like this one. 3 F.3d 673 (3d Cir. 1993). Constructive possession requires (1) "dominion and control" over an object, and (2) knowledge of the object's existence. *United States v. Iafelice*, 978 F.2d 92, 96 (3d Cir. 1992). "Dominion and control" means "the ability to reduce an object to actual possession." *United States v. Martorano*, 709 F.2d 863, 869 (3d Cir. 1983). So far, so good. But in *Brown*, we stated that "mere proximity to [an object] . . . is insufficient to support a finding of possession." 3 F.3d at 680. *Brown* stretched an unobjectionable proposition—mere proximity to an object does not always establish possession—into a categorical rule: No reasonable factfinder could ever infer constructive possession from mere proximity. *Id*. Nothing in logic or governing precedent justified that extension.

As with many questions of fact, constructive possession will depend upon context, probabilities, and common sense. *See United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) ("[W]e review the evidence as a whole, not in isolation . . . ."); *see also United States v. Owens*, 966 F.3d 700, 709 (8th Cir. 2020) ("Rational jurors, using reason and common sense in light of their own observations and experiences, could infer beyond a reasonable doubt . . . ."). There are contexts in which proximity may be innocent and no rational trier of fact could find the defendant guilty beyond a reasonable doubt. *See, e.g.*, *United States v. Zeigler*, 994 F.2d 845 (D.C. Cir. 1993) (finding insufficient evidence to support nonresident's constructive possession of

1

drugs in a locked briefcase in a locked room in neighboring apartment). This is not one of them. A rational factfinder can reasonably infer that a man sitting alone with a firearm within reach has the ability to reduce that firearm to actual possession based solely on his proximity. *Cf. United States v. Xavier*, 2 F.3d 1281, 1289 (3d Cir. 1993) ("A weapon is under one's control . . . if it is in an area from which he might gain immediate possession.").[1] So long as a finding does not "fall below the threshold of bare rationality," we must uphold the verdict. *See Caraballo-Rodriguez*, 726 F.3d at 431.

     *Brown* conflicts with this highly deferential standard of review. *Brown*'s rule rejects out of hand the possibility that a rational factfinder could determine a defendant possessed an object based on his proximity alone, even when that determination is rational. This rule has sometimes generated absurd results. *See, e.g.*, *United States v. Jenkins*, 90 F.3d 814, 816 (3d Cir. 1996) (Cowen, J., dissenting) ("Today the majority holds that no rational jury could possibly conclude that a man in his underwear sitting on a sofa that is surrounded by cocaine, assorted drug paraphernalia and firearms can be guilty of a possessory offense under the constructive possession doctrine.").

---

[1] A charitable reading of *Brown* suggests that this scenario is not "mere proximity," but "proximity plus context." Allowing this scenario to transform "mere proximity" into "proximity plus" deprives the phrase "mere proximity" of meaning and facilitates its inconsistent application. *Compare Brown*, 3 F.3d at 680 (finding "mere proximity" insufficient because Baltimore merely resided in the drug "cut house"), *with Jackson v. Byrd*, 105 F.3d 145, 150 (3d Cir. 1997) (finding constructive possession where drugs were discovered in the room of another resident); *compare United States v. Jenkins*, 90 F.3d 814, 816 (3d Cir. 1996) (finding "mere proximity" insufficient for defendant seated at a coffee table with drugs, paraphernalia, and firearms), *with United States v. Mitchell*, 229 F. App'x 153, 156 (3d Cir. 2007) (finding constructive possession where defendant was seated on a couch "with access to the weapons").

The legal support for *Brown*'s rule never existed or has evaporated. *Brown* relied on *United States v. Davis*, 461 F.2d 1026, 1036 (3d Cir. 1972) and *United States v. Walker*, 993 F.2d 196, 200 (9th Cir. 1993) for the proposition that "mere proximity . . . is insufficient to support a finding of possession." 3 F.3d at 680. But both *Davis* and *Walker* cited proximity as sufficient evidence of constructive possession. *Davis*, 461 F.2d at 1036 (rational jury could infer possession when defendant and heroin were found in kitchen); *Walker*, 993 F.2d at 200 ("Based on the close proximity of both the gun and ammunition to drugs, and the gun's location near the couch where Walker had been lying, a rational jury could have found beyond a reasonable doubt that Walker was prepared to use the gun.").

*Brown* also relied on *United States v. Vasquez-Chan*, which stated that "[w]hen there is an innocent explanation for a defendant's conduct as well as one that suggests that the defendant was engaged in wrongdoing, the government must produce evidence that would allow a rational jury to conclude beyond a reasonable doubt that the latter explanation is the correct one." 978 F.2d 546, 549 (9th Cir. 1992), *overruled by United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) (en banc). As the Ninth Circuit recognized in *Nevils*, that flips the highly deferential sufficiency-of-the-evidence standard on its head. 598 F.3d at 1167 (overruling *Vasquez-Chan* because it "construed evidence in a manner favoring innocence rather than in a manner favoring the prosecution"); *see also Caraballo-Rodriguez*, 726 F.3d at 432 (reversing "the jury's conclusion simply because another inference is possible—or even equally plausible—is inconsistent with the proper inquiry for review of sufficiency of the evidence challenges"). Our continued

reliance on *Brown* is a tacit endorsement of the improper standard of review we expressly rejected en banc in *Caraballo-Rodriguez.*

*Brown*'s caution about proximity was correct up to a point. But we should cabin it to the unobjectionable proposition that a defendant's mere proximity to an object does not always establish constructive possession.